MARY A. BARNES and others v. W. J. BROWN, Executor.

*Removal of Executor—Jurisdiction.*

1. The Probate Court has original jurisdiction of a proceeding to remove an executor.

2. When, in the course of such a proceeding, it appears inferentially that the executor has become a bankrupt since the death of his testator, and when it is clearly shown that he is the owner of no property above his exemptions, that he has neglected for six years to file in the proper Court an inventory or return of any sort, and has failed to convert the personal property into money for the payment of debts, it is the duty of the Probate Court, upon the application of judgment creditors, to require such executor to give bond for the faithful discharge of his duties, and, in default of such bond, to remove him from his office.

(*Hunt* v. *Sneed,* 64 N. C. 180 ; *Neighbors* v. *Hamlin,* 78 N. C. 42, cited, commented on and approved.)

PETITION for the Removal of an Executor, filed on the 24th of November, 1875, in the Probate Court of ROBESON, and heard on appeal at Chambers, before *McKoy, J.*

26

The petition states in substance that Reuben King died in March, 1869, leaving a last will and testament appointing the defendant his executor, who qualified in said month; his estate was amply sufficient to pay his debts; the executor assented to and delivered legacies to the legatees; the plaintiffs recovered judgments against the executor upon claims due them by the testator, which the defendant has refused to pay; the defendant filed his petition and obtained his discharge in bankruptcy, and has no property except a homestead and personal property exemption, and has given no bond for the faithful discharge of his duties as executor, nor made any report of receipts and disbursements; wherefore the plaintiffs asked that the defendant be required to file a sufficient bond, or be removed from his office as executor.

In his answer the defendant says that the personal property of his testator has been expended in the payment of debts, as will appear from his annual report on file; that there are a number of suits involving large amounts now pending against the estate; he admits he has given no bond, for that, being a trust reposed in him by his testator, the law did not require it, denies the allegation in regard to his financial condition, and says that he has already advanced largely of his own means in paying the debts of his testator, but has no funds on hand to pay the judgments alleged to be due the plaintiffs; he further says that as there are large outstanding debts, and claims in litigation against the estate, and in the event of a recovery, there would not be a sufficiency of assets to pay them all, the plaintiffs would only be entitled to their pro rata share.

The plaintiffs demurred to the answer and assigned as cause; 1st. Having qualified as executor prior to the 1st of July, 1869, the defendant was required to pay the debts according to their dignity and not pro rata as he claims to have done. 2d. The plaintiffs having judgments against

him, he was required by law to pay them in preference to those he did pay. 3d. He committed a devastavit in paying the $2000 which he claims to have paid subsequent to January. 1873, the date of plaintiffs' judgment.

Upon the hearing before the Probate Judge, the demurrer was overruled and the petition dismissed, and on appeal His Honor reversed the judgment and remanded the case with directions to the Probate Judge to proceed according to law to administer the rights between the parties, from which ruling the defendant appealed.

*Messrs. W. F. French* and *N. McLean,* for plaintiffs.
*Messrs. Giles Leitch,* and *A. Rowland,* for defendant.

RODMAN, J. The plaintiffs are creditors of Reuben King who since his death have recovered several judgments against the defendant as his executor.

They petitioned in the Probate Court for the removal of the defendant from his office as executor, and for the appointment of an administrator *de bonis non, cum test. annex.*

The grounds of their application are briefly these: 1st. The testator died in March, 1869, and in the same month the defendant proved his will and qualified as executor. 2d. The executor has assented to and paid legacies, while debts were outstanding and unpaid. 3d. Defendant is a bankrupt and has no property beyond his homestead and personal property exemption. 4th. He has made no return of the estate of his testator or of his dealings with the same. In reply to these allegations:—

1. The defendant does not *expressly* deny that he has assented to and paid legacies, but he refers to and makes part of his answer an account filed in the Probate Court shortly after the filing of the petition, viz, on the 15th of December, 1875, professing to be an account of all monies received and expended by him up to that date, from which

it appears that he had received $22,319.45, and had paid out upon the debts of his testator $25,125.54. As this account apparently does not set forth the payment of any legacies, it is a fair inference that the defendant means to deny that he had paid any, and as this allegation is not otherwise proved, we consider it as out of the case.

2. There is however this to be noted about defendant's return, that it does not profess to be a return of *all* of the personal property of the testator which had come to the hands of the defendant, as it ought to have been; and although he says he has no funds wherewith to pay the plaintiffs, yet it is consistent with his answer that he has personal property of the testator, not returned, and not converted into money; and this view is strengthened by the fact, that by his pleading in the actions of the plaintiffs, he admitted assets to satisfy their claims.

3. The defendant does not deny his bankruptcy, neither does he say that he was a bankrupt at the death of the testator, and that the same was known to him, but contents himself with denying the allegation that he has no property beyond what is exempted, and does *not say* that he has property enough to pay the debts of the plaintiffs who are entitled to execution *de bonis propriis.*

4. The return is further defective in this; it does not set forth the nature or dignity of the debts paid by him, or the dates at which he paid them, that is, whether before or after the judgments of plaintiffs. It does not appear that the defendant filed his vouchers with the return, so as to enable the Probate Judge to pass on them, or that he has passed on them.

On these pleadings the Probate Judge overruled the demurrer which was assumed to have been filed to the answer and dismissed the action, from which judgment the plaintiffs appealed. The Judge in the Superior Court reversed the order of the Probate Judge, and remanded the case to him

to proceed therein according to law, without however giving any particular direction as to how he should proceed. From this judgment the defendant appealed to this Court. The facts which appear to us upon the pleadings may be summarily stated :

The defendant qualified as executor in March, 1869, he delayed for over six years, and until after this action was brought against him, to make any inventory or return of any sort, and then makes an imperfect and uncertain one. He impliedly admits that he has personal property of the testator which he has not returned, and that his own property is not sufficient to pay the debts upon which the plaintiffs have recovered judgments, and for which he is personally liable.

While poverty or even insolvency is not of itself a sufficient ground for removing an executor, especially when the insolvency existed, and may be supposed to have been known to the testator at the making of the will, or before his death, yet insolvency, whether known to the testator or not, coupled with a continued disregard of duty, even if not fraudulent, but merely ignorant or negligent, certainly shows that the trustee is unfit for his office, that the interests of his *cestuis que trust* are not safe in his hands, and that he ought to be removed or at least required to give such a bond as will fully protect the interests of all having interests in the property in his hands. We concur with the Judge of the Superior Court in reversing the order of the Probate Judge, but think he should have given the latter particular directions how to proceed upon the matter immediately in controversy.

There remains one question which we ought to pass on, which, as it is not made in the pleadings and was not so distinctly presented on the argument as to attract our attention, might have escaped it, if we had not been reminded of it by counsel afterwards ; it is as to the jurisdiction of the

Probate Judge in the premises. The act of 1868,-'69, ch. 113, § 90, (Bat. Rev., ch. 45, § 141) authorizes any surety on the bond of an executor, &c., who is in danger of sustaining loss, to petition in the Probate Court for the removal of the executor, &c. But there is no act of assembly that I am aware of which expressly gives the Probate Judge power to remove an executor, &c., on the application of any other person such as a legatee or creditor, &c.

Before the constitution of 1868, the Courts of Equity alone had that jurisdiction. If the Probate Courts now have it, it can only be as contained in the grant of the power to grant letters testamentary, &c., and to audit the accounts of executors, &c., in the constitution of 1868 (Art. IV, § 17) or as it may be implied from the act of 1868-'9 above cited.

If the question were entirely *res nova* it might admit of some doubt. The power to grant letters testamentary does not *necessarily* imply the power to revoke them. The two powers may be and have often if not usually been assigned to distinct Courts. It is however a reasonable, if not a necessary implication; and the right of a legatee or a creditor to apply for revocation stands in reason and convenience upon the same footing with that expressly given to a surety of an executor by the act of 1868,-'9. The opinion of the Court in *Hunt* v. *Sneed*, 64 N. C., 180, delivered by DICK, J., does not clearly state the point or the reason for the decision. It seems to put the jurisdiction in this particular case upon the ground that it is implied from the jurisdiction given by the constitution, (Art. IV, § 17. The *decision* however was positively in point.

The printed report of the case does not show in what character the plaintiff sought to require an additional bond from the defendant, or his removal. We have examined the transcript of the record filed in this Court, and it appears that the plaintiff was not a surety of the defendant

(who had married the feme executrix of Bullock, and had given bond as required by the act of 1868,-'9, Bat. Rev., ch. 45, § 137,) but was a legatee under the will of Bullock, the testator of defendants. The question of the jurisdiction of the Probate Judge in such a case was squarely raised, and it was the only question in the case.

The opinion of the Court says: "The proceedings against the defendants, &c., were properly commenced before said Judge of Probate. His powers in this respect are derived from the Constitution *and* the Code of Civil Procedure, and the act of 1868,-'9 only sets forth the forms of proceeding," &c. Before the passing of said act he (the Probate Judge) had the power to require the defendants to * * * give a new bond with sufficient sureties, or be removed from office," &c.

The Court affirmed the judgment requiring the defendant to give bond or to be removed, thus directly affirming the original jurisdiction of the Probate Judge. The only other case bearing on this point that I am aware of is that of *Neighbors* v. *Hamlin*, 78 N. C., 42. That was an application to a Probate Judge by a creditor as in this case, to require an executor to give bond or be removed. The question of jurisdiction was not made. The Court in its opinion assumed that it had been settled in *Hunt* v. *Sneed*, and we take it that it has been settled by that decision and the acquiescence of the profession in favor of the jurisdiction of the Probate Judge.

The judgment of the Superior Court is affirmeed with this addition,—the Probate Judge is directed to require that the defendant shall within reasonable time to be fixed by the Probate Judge give a bond with sureties, in a sufficient amount, conditioned for the proper administration of the estate of the testator, King, or on default by defendant to give such bond, shall revoke his letters testamentary, and appoint an administrator *de bonis non, cum testamento annexo,*

and require from him a proper bond.　The case is remanded.
Let this opinion be certified.

　　No Error.　　　　　　　　　　　Judgment affirmed.