BILLY MATTHEWS, JACK MATTHEWS, LEONARD MATTHEWS, JOSE-
PHINE BRIDGERS, ELIZABETH BRADLEY, BARTHOLOMEW KIMBALL,
MARGARET JONES FOUNTAIN, HUGH SHERROD, ROM SHERROD,
NELL ANDERSON, DAPHNE LILES, MILDRED RODGERS, AND ELIZA-
BETH MARSHBURN, PETITIONERS-APPELLANTS v. WILLIAM T. WATKINS,
EXECUTOR OF THE ESTATE OF ANNIE MAE S. DAVIS, RESPONDENT-
APPELLEE

No. 879SC1089

(Filed 1 November 1988)

1. **Clerks of Court § 10; Executors and Administrators § 5— action to remove ex-
ecutor—testimony of clerk—oral approval of respondent's actions**

In an action to have respondent removed as executor of an estate based in part upon allegations that respondent had been in default of his duties as executor, the trial judge did not err by admitting testimony from the clerk of superior court that she had orally approved respondent's actions in several instances. The failure of the clerk to record all or part of a proceeding does not render the proceeding void. N.C.G.S. § 7A-109.

2. **Witnesses § 7— action to remove executor—testimony of clerk—based on
written memorandum—refreshing memory**

The trial court did not abuse its discretion in an action to remove respondent as executor of an estate by refusing to strike testimony of the clerk of superior court based on a written memorandum concerning services performed by respondent upon which the award of attorney's fees was based where the clerk independently recalled that she had awarded attorney's fees for services performed by respondent, and used the memorandum to specify what the services were. Moreover, the reasonableness of the fee is not at issue

in this proceeding and the admission of the testimony could not have been prejudicial. N.C.G.S. § 8C-1, Rule 803(5).

**3. Executors and Administrators § 37.1— executor's commission—proceeds of sale of real property**

The trial court did not err in an action to remove respondent as an executor of an estate by finding that the executor's commissions could be paid on the proceeds of the sale of real property where the property was not sold "to pay debts or legacies" and N.C.G.S. § 28A-23-3(b) is not involved. Moreover, any error would not be grounds for reversal since the amount of the fee is not at issue.

**4. Executors and Administrators § 37— employment of law firm mandated by will—justification for payment**

The trial judge did not err in an action to revoke Letters Testamentary by concluding that the will mandated that respondent employ his own law firm and that respondent's actions did not constitute default or misconduct, even though the will provision alone does not justify payment of attorney's fees, where there was evidence that some services were provided which justified payment of fees under N.C.G.S. § 28A-23-4 and evidence that the clerk approved the fee. N.C.G.S. § 28A-23-3(a).

**5. Executors and Administrators § 37.1— executor's commissions and attorney's fees—conclusion that determination of reasonableness unnecessary—no prejudice**

There was no prejudice in an action to remove an executor from the trial court's conclusion of law "that the payment of commissions of $89,000 being less than ten percent of the receipts and expenditures of the estate . . ., it is not necessary in this proceeding to make a determination as to the reasonableness of said fee" where the conclusion merely confirms that the amount paid was within the amount approved by the clerk, the reasonableness of which was not for consideration in this proceeding.

**6. Executors and Administrators § 37.1— attorney's fees—determination of amount**

Fees awarded under N.C.G.S. § 28A-23-4 should be for actual services rendered and should not be based solely upon the size of the estate; nevertheless, the size of the estate provides a useful guideline and may be considered as a factor in determining whether legal services were necessary and the time expended justified.

**7. Executors and Administrators § 37.1— attorney's fee—award of fee based on percentage of estate—not subject of appeal—no reversible error**

There was no reversible error in an action to remove an executor from the award of attorney's fees based on a percentage of the estate because the amount of the fee was not under review on this appeal.

**8. Executors and Administrators § 37— award of legal fees—argument that no approval obtained—no error**

There was no error in the signing and entry of an order denying a petition to revoke Letters Testamentary, which was based in part on the theory

that respondent obtained no approval for the payment of legal fees, where the clerk testified that she approved commissions equal to ten percent, with five percent for attorney's fees. The credibility of the testimony is for the trier of fact to decide.

Judge WELLS concurring.

Judge ORR dissenting.

APPEAL by petitioners from *Hobgood (Robert H.), Judge.* Order entered 2 July 1987 in Superior Court, GRANVILLE County. Heard in the Court of Appeals 5 April 1988.

This is a proceeding pursuant to G.S. 28A-9-1(a)(3) to have respondent removed as executor of the Estate of Annie Mae S. Davis. Petitioners are residuary beneficiaries under Ms. Davis's will. Ms. Davis died on 9 April 1985, and her will was admitted to probate on 22 April 1985. The will named respondent as executor and further provided that "my executor shall employ the law firm of Watkins, Finch & Hopper, Attorneys at Law, as the attorneys to assist in the handling and settling of my estate." Respondent is a member of the law firm Watkins, Finch & Hopper. Letters Testamentary were issued to respondent as executor of the Estate of Annie Mae S. Davis on 22 April 1985.

On 12 August 1985, the assistant clerk of superior court issued to respondent a notice that the inventory of the estate required by G.S. 28A-20-1 was due. The inventory was not filed until 21 October 1985. The assistant clerk also issued a notice stating that the annual account was due on 2 June 1986, and the annual account was not filed until 17 June 1987. On 11 December 1985, pursuant to a petition filed by respondent, the clerk of superior court entered an order allowing respondent to pay to himself eighty percent of the commissions to be allowed for administering and settling the estate. On 16 September 1986, respondent filed a petition for the payment of the remainder of the commissions and the clerk allowed payment by order entered the same day.

The annual accounting showed that the following payments were made to the law firm of Watkins, Finch & Hopper: $65,000 on 2 January 1986, $4,000 on 30 April 1986, and $20,000 on 19 March 1987, for a total of $89,000. These payments included respondent's executor's commission, and the payments were approved by the clerk.

Petitioners initially filed a petition to revoke respondent's Letters Testamentary on 19 June 1987; thereafter they filed an amended petition on 24 June 1987. The petition alleged that respondent had violated his fiduciary duty through default and misconduct within the meaning of G.S. 28A-9-1(a)(3). Specifically, petitioners alleged that respondent had unlawfully converted sums paid to his law firm, had misrepresented to one of the beneficiaries that respondent was entitled to receive the amounts paid as an executor's commission and attorney's fees, and had been in default of his duties as executor by failing to file the account in a timely manner.

The clerk of superior court entered an order disqualifying herself to hear the petition, and the petition was heard by the senior resident superior court judge pursuant to G.S. 28A-2-3. The judge concluded that respondent was not guilty of default or misconduct in the exercise of his duties and denied the petition to revoke the Letters Testamentary. Petitioners appeal.

*Parker and Parker, by Rom B. Parker, Jr., for petitioner-appellants.*

*Adams, McCullough and Beard, by J. Allen Adams and Heman R. Clark, for respondent-appellee.*

PARKER, Judge.

For the reasons discussed herein, we affirm the judge's ruling denying the petition. Petitioners bring forward ten assignments of error. Four of petitioner's assignments of error concern the admission of testimony of the clerk of superior court. Petitioners contend that the testimony was inadmissible as parol evidence of court proceedings. Petitioners also contend that the judge erred in denying their motion to strike part of the testimony on the grounds that it was not based on the witness's own recollection. Petitioners next assign error to the judge's finding that the receipts and expenditures on which the executor's commission was based included proceeds from the sale of real property. Petitioners' remaining assignments of error concern the judge's conclusions to the effect that the payment of attorney's fees to respondent's law firm was not grounds for revocation of respondent's Letters Testamentary.

At the outset we note that the parties stipulated in open court that the amount or reasonableness of the legal fee was not at issue in this proceeding. The following exchange took place among counsel and the judge:

MR. ADAMS: If the Court please, the respondent as it understood the petitioner has no further evidence, and if the question of the amount of the fee comes before the Court, then we would need time to marshal the evidence and go through that; but we did not understand this proceeding is to question of the amount of the fee but whether or not he was entitled to any fee and illegally took it.

MR. PARKER: I agree with that, Your Honor. In fact, the Courts have held that in a proceeding of this nature it's not the function of the Court to adjust the rights of the parties but simply to determine whether Letters Testamentary should be revoked; and that's really the only issue. The other would come later in a separate matter.

Thus, the sole legal question before the judge at the hearing below was whether respondent was guilty of default or misconduct justifying revocation of his Letters Testamentary and his removal as executor.

In *Jones v. Palmer*, 215 N.C. 696, 698-99, 2 S.E. 2d 850, 852 (1939), our Supreme Court, construing the predecessor of G.S. 28A-9-1, stated:

Such action is usually instigated by the necessity of presently preserving the estate, rather than for punishment or correction of personal representatives.

. . . .

. . . The exigencies of administration require the exercise of sound judgment, and this necessarily implies discretion in its supervision. This statute provides for the revocation of letters of administration and the removal of administrators from office upon complaint that the person to whom the letters were issued "has been guilty of default or misconduct in the due execution of his office." If, upon a hearing, "the objections are found valid, the letters issued to such person must be revoked and superseded and his authority shall thereupon cease."

"Must" denotes imperative action, indeed, but the action becomes imperative only when the conditions upon which it shall be taken are clear and compelling. Before taking action, the clerk must determine the validity of the charges brought against the administrators, and this, . . . includes a finding of their sufficiency to justify removal, in determining which he must exercise his good judgment under the guidance of law and precedent. *In re Battle,* 158 N.C., 388, 74 S.E., 23. While strict supervision is demanded, no matter within the guardianship of the law calls more strongly for the application of sound business principles. Rules do not think; ministerially applied they are manifestly inadequate.

The clerk is not compelled to remove an administrator for failing promptly to file an inventory when in his judgment the estate has received no damage; C.S., 48, 49; nor for failure to file account; C.S., 106; nor for delay in winding up an administration. Instead of removal, the performance of all these duties may be enforced by appropriate proceeding. *Atkinson v. Ricks,* 140 N.C., 418, 53 S.E., 230; *Barnes v. Brown,* 79 N.C., 401. But he may remove an executor or administrator for such failure, and must do so when he finds the omission of duty is sufficiently grave to materially injure or endanger the estate, or if compliance with the orders of the court in the supervision and correction of the administration are not promptly obeyed.

The appeal from the judge of the Superior Court is heard upon matters of law and legal inference. *Wright v. Ball,* 200 N.C., 620, 158 S.E., 192; *In re Will of Gulley,* 186 N.C., 78, 118 S.E., 839. We do not regard the failure of the court below to find facts as material, since upon such facts as might be found from the evidence we cannot find an abuse of discretion.

As stated in *In re Estate of Galloway,* 229 N.C. 547, 50 S.E. 2d 563 (1948):

That is, the question before the clerk is whether the administrator, "has been guilty of default or misconduct in the due execution of his office." G.S. 28-32. In passing upon such question, the clerk exercises a legal discretion which may be reviewed on appeal.

Matthews v. Watkins

229 N.C. at 551, 50 S.E. 2d at 566. (Citations omitted.) In this case the clerk of superior court recused herself because of a potential conflict of interest. The resident superior court judge sat in the clerk's stead. On appeal, this Court may not substitute its findings for those of the judge if there is evidence to support the findings of the judge. *In re Estate of Swinson,* 62 N.C. App. 412, 303 S.E. 2d 361 (1983).

[1] Against this background, we now discuss each of petitioners' assignments of error. Petitioners first contend that the judge erred in admitting certain testimony of the clerk, in denying petitioners' motion to strike portions of respondent's answer which were supported by the testimony, and in basing findings of fact and conclusions of law upon the testimony. The testimony in question concerned conferences between the clerk and respondent with regard to the Davis estate.

The testimony was crucial to respondent's defense because it established that the clerk had orally approved respondent's actions in several instances where such approval was required. First, the clerk testified that she had orally granted respondent extensions of time for filing both the inventory and the annual account of the estate. Statutes provide that a personal representative may obtain further time to file inventories and accounts from the clerk of superior court. G.S. 28A-20-2(a); G.S. 28A-21-4.

The testimony was also essential to respondent's explanation of his payments to the law firm. A personal representative is entitled to commissions in an amount not to exceed five percent of the receipts and expenditures, G.S. 28A-23-3(a), and the clerk of superior court may allow commissions during the course of administration. G.S. 28A-23-3(c). An attorney who serves as a personal representative may be allowed counsel fees for services rendered to the estate as an attorney. G.S. 28A-23-4. All commissions and fees must, however, be approved by the clerk. *In re Estate of Longest,* 74 N.C. App. 386, 393, 328 S.E. 2d 804, 809, *disc. rev. denied and appeal dismissed,* 314 N.C. 330, 333 S.E. 2d 488 (1985).

In the present case, the clerk's written orders approved payment of "commissions" but failed to specify the amount. The orders also did not indicate that any attorney's fees had been approved. The total amount paid to the law firm ($89,000) was slight-

ly less than ten percent of the total receipts and expenditures ($956,754.32). Thus, the amount paid clearly exceeded the maximum executor's commission of five percent. The clerk testified that, during a conference with respondent in October or November of 1985, she told him that she would allow the full five percent commission plus an additional five percent of receipts and disbursements as attorney's fees. This testimony established that respondent had obtained verbal authorization from the clerk to pay the amounts shown in the account.

Petitioners contend that the testimony was not admissible to establish the clerk's verbal approval of the commission and fees. Petitioners rely on *State v. Tola*, 222 N.C. 406, 23 S.E. 2d 321 (1942) to argue that the clerk's actions may not be proven by parol evidence. Petitioners also rely on G.S. 7A-109, which requires the clerk to maintain records of court actions, including proceedings in estates.

In *State v. Tola*, the court held that a judgment could not be explained or contradicted by parol testimony. *Tola*, 222 N.C. at 408, 23 S.E. 2d at 323. *Tola*, however, involved a criminal defendant who was seeking to explain a judgment of guilty in support of his plea of former jeopardy, and the defendant was actually permitted to introduce the evidence at trial. *Id.* In addition, the *Tola* court recognized that such testimony would be admissible in a separate proceeding to amend the record. *Id.* at 408-09, 23 S.E. 2d at 323.

We do not find *Tola* to be controlling in the present case. A case more directly on point is *Trust Co. v. Toms*, 244 N.C. 645, 94 S.E. 2d 806 (1956). In *Toms* the beneficiaries of a trust filed a motion seeking to hold the original trustee liable for funds converted by a successor trustee. Although the clerk of superior court had entered an order appointing the successor trustee, the docket did not show that the order was approved by the judge, which was required by statute. The original trustee presented affidavits to establish that the order had been approved by the judge but that the papers showing such approval had been lost, and the motion was denied.

On appeal, the movants contended that the docket was conclusive and could not be supplemented, modified, or corrected. The Supreme Court disagreed:

Matthews v. Watkins

The attack here made on the order of resignation is not a collateral attack. It is a motion in the cause in which the court, upon the assertion of respondent that all of the record has not been recorded, has the power and should determine what in fact was done.

It is to provide a permanent record and guard against loss of the original papers that the statute . . . directs the clerk to keep books in which the papers may be transcribed. The failure of the clerk to comply with the statute by neglecting to record all or a part of a proceeding does not render the proceeding void. Any interested party may, by motion, require the proceeding to be recorded . . . . The power of a court to make its records speak the truth cannot be doubted. To hold otherwise would make a mockery of justice.

*Trust Co. v. Toms*, 244 N.C. at 649-50, 94 S.E. 2d at 810.

Like the respondent in *Toms*, respondent in this case introduced parol evidence to demonstrate that his actions had been approved by the court. Accordingly, we find no error in the admission of the clerk's testimony.

[2] Petitioners next contend that the judge erred in permitting the clerk to base some of her testimony on a written memorandum. The testimony in question concerned the services performed by respondent upon which the clerk based the award of attorney's fees. The record discloses that the clerk prepared a list of such services after reviewing the estate file and the answer filed by respondent in this case; she testified from this list. Petitioners argue that the judge erred in denying their motion to strike the testimony on the grounds that it was not based on the witness's personal knowledge or independent recollection. We disagree.

The testimony is clearly not admissible as a recorded recollection because the list was not prepared when the matter was fresh in the witness's memory. *See* Rule 803(5), N.C. Rules Evid. Testimony based on a written memorandum may also be admitted, however, when the witness uses the writing to refresh her memory. *State v. Smith*, 291 N.C. 505, 516, 231 S.E. 2d 663, 670 (1977). A writing used for such a purpose need not be prepared by the witness herself, and it may be used to refresh the memory of the witness prior to trial. *Id.* at 516-17, 231 S.E. 2d at

671. The testimony should be excluded if it is clearly a mere recitation of the memorandum, but a ruling on a motion to strike the testimony on these grounds is a matter within the discretion of the trial judge. *Id.* at 518, 231 S.E. 2d at 671-72.

Since the clerk independently recalled that she had awarded attorney's fees for services performed by respondent and she used the prepared list only to specify what the services were, the judge, sitting without a jury, did not abuse his discretion by refusing to strike the testimony. Moreover, reasonableness of the fee not being at issue in this proceeding, the admission of the testimony could not have been prejudicial to petitioners.

[3] Petitioners next assign error to the judge's finding of fact that the clerk could allow commissions on the sum of $956,754.32. Petitioners argue that this sum erroneously includes the amount of $71,384.89 which was received from the sale of real property in the estate. The will directed respondent to sell the property and distribute the proceeds to the residuary beneficiaries.

Petitioners' argument is based on G.S. 28A-23-3(b), which provides in pertinent part:

Where real property is sold to pay debts or legacies, the commission shall be computed only on the proceeds actually applied in the payment of debts or legacies.

Petitioners contend that payment to residuary takers does not constitute payment of "legacies" and, therefore, respondent was not entitled to commissions on the proceeds.

We do not find it necessary to construe the term "legacy" in order to resolve the question before us in this case. The title to real property devised under a will vests in the devisees at the time of the testator's death. G.S. 28A-15-2(b). Land is not an asset of the estate until it is sold and the proceeds are received by the personal representative. *Linker v. Linker*, 213 N.C. 351, 354, 196 S.E. 329, 331 (1938). When land is sold to pay the debts of an estate, any surplus retains the status of real estate and remains vested in the devisees. *Id.*

Under G.S. 28A-23-3(a), a personal representative's commission is based on the receipts and expenditures of the estate. Under G.S. 28A-15-1(c), the personal representative may sell real

estate "to obtain money for the payment of debts and other claims against the decedent's estate . . . ." Thus, G.S. 28A-23-3(b) ensures that the personal representative's commission on such a sale is limited to the amount that was actually needed for the payment of claims. This discourages personal representatives from selling land merely to increase their commissions.

In the present case, respondent was required to sell the property under the terms of the will; thus the policy of G.S. 28A-23-3(b) is not involved. The property was not sold "to pay debts or legacies"; hence, subsection (b) does not apply, and the proceeds would be included in commissionable receipts under subsection (a) of G.S. 28A-23-3. Accordingly, the judge did not err in finding that commissions could be paid on the proceeds. We also note that, because the amount of the fee is not at issue, any error in this regard would not be grounds for reversal. Respondent's acceptance of commissions based on an erroneous interpretation of a statute would not be misconduct requiring revocation of Letters Testamentary.

[4]  Petitioners next contend that the judge erred in making conclusions of law numbers 4 and 5 in which the judge concluded that the will "mandated" that respondent employ his own law firm and that respondent's actions did not constitute default or misconduct. Petitioners argue that, although the will directed respondent to employ his firm, such employment would only be justified if legal services were required, and such services were not required in this case.

We agree that the will provision alone does not justify the payment of attorney's fees. Such fees are payable only when services rendered are beyond the ordinary routine of administration and a representative who is not an attorney would be reasonably justified in retaining legal counsel. G.S. 28A-23-4. The judge did conclude, however, that respondent and his firm "rendered professional services as attorneys to the estate which were beyond the ordinary routine of estate administration." The gist of petitioners' argument is that respondent and his firm did not provide non-routine services so as to justify the payment of any attorney's fees.

We first note that petitioners' reliance on *Lightner v. Boone*, 221 N.C. 78, 19 S.E. 2d 144 (1942) is misplaced. That case was

decided prior to the enactment of G.S. 28A-23-4, at which time an attorney who became an executor was not entitled to extra compensation for legal services rendered to the estate. *Lightner v. Boone*, 221 N.C. at 86, 19 S.E. 2d at 150. Petitioners also mistakenly rely on *In re Estate of Longest, supra.* In *Longest,* the revocation of Letters Testamentary was upheld where an executor paid himself fees and commissions without obtaining any approval from the clerk. *Longest,* 74 N.C. App. at 393-94, 328 S.E. 2d at 809. In the present case, the clerk testified that she approved the fees after conferring with respondent as to the amount of work involved in the administration of the estate. The clerk also testified that respondent did not request a dollar amount and that she advised him she would allow ten percent—five for commissions and five for legal fees. By approving a percentage, though not stated as a specific dollar amount, the clerk fixed the fee as required in *Longest.*

The steps in the settlement of an estate are described in G. Stephenson and N. Wiggins, Estates and Trusts Ch. 15, at 219 (5th ed. 1973), and include:

> (1) procedure prior to appointment of administrator or executor; (2) appointment of administrator or executor; (3) assembling property belonging to estate; (4) safekeeping or safeguarding that property; (5) interim management of that property; (6) assembling, passing upon, and paying debts, taxes, and expenses of settlement of estate; (7) accounting for settlement of estate; and (8) distributing net estate.

The need for legal services in executing one or more of these steps will vary from estate to estate depending upon the circumstances of each case. The nature of the assets, the number, age and location of heirs and beneficiaries, the care with which the decedent attended to his business affairs, and myriad other factors may affect whether legal services would be required by a nonattorney personal representative to complete administration of an estate. Likewise, the nature and extent of legal services required must be determined on a case-by-case basis. While certain lawyer services such as handling litigation, drawing legal documents, and rendering legal opinions based on legal research clearly are beyond the ambit of routine administration, other services such as preparing the ninety-day inventory, annual account, and

final account are routine administration even when performed by a lawyer. Between these two extremes, there may be some services rendered by a lawyer personal representative which, in the context of a particular estate, constitute legitimate legal services beyond routine administration even though these tasks might be undertaken by a nonlawyer personal representative; for example: lease negotiations, conferences with Internal Revenue Service Agents, or negotiations to sell real or personal property. In this last category, the personal representative may not be required to have legal assistance, but prudence may dictate that to retain legal counsel would be reasonably justified. We shall not attempt to define all services which justify the payment of attorney's fees under G.S. 28A-23-4. The legislature undoubtedly took these varying circumstances into consideration when it vested the clerk of superior court with responsibility for evaluating the evidence produced by the attorney/executor and applying the prescribed two-pronged test to determine legal fees. G.S. 28A-23-3(a); G.S. 28A-23-4.

A petition to revoke Letters Testamentary is addressed to the discretion of the clerk, or, in this case, the judge. *See Jones v. Palmer*, 215 N.C. 696, 25 S.E. 2d 850 (1939). The denial of the petition, though reviewable, will not be reversed unless clear and compelling grounds for revocation are shown. *Id.* at 699, 25 S.E. 2d at 852. On the record before us, there is evidence that some services were provided by respondent and his firm which justify the payment of fees under G.S. 28A-23-4. There is also evidence that the clerk approved the fee. The clerk's approval of the fee is strong evidence that respondent's payment of the fee was not a breach of his duty. Whether the clerk applied the standard set forth in G.S. 28A-23-4 improperly and acted erroneously in approving a fee of five percent, as opposed to any fee, is not at issue in this proceeding as that question goes to the amount or reasonableness of the fee rather than to respondent's alleged misconduct. We do note, however, that the better procedure is for the attorney personal representative to submit his request for legal fees in writing supported by a statement detailing the specific legal services rendered and for the clerk to issue the order in writing stating the specific dollar amount approved.

[5] Petitioners next assign error to the court's conclusion of law "that the payment of commissions of $89,000.00 being less than 10

percent of the receipts and expenditures of the estate of Annie Mae S. Davis, it is not necessary in this proceeding to make a determination as to the reasonableness of said fee." Petitioners contend that this conclusion was "offered gratuitously by the court"; that it was made upon erroneous findings of fact premised on inadmissible parol testimony by the clerk of court; and that the conclusion is contrary to law. While we agree that the conclusion of law was superfluous in view of the parties' stipulation, we perceive no prejudicial error resulting from its inclusion. The key words are "in this proceeding." Read in light of the stipulation that the reasonableness or amount of the legal fee was not at issue and finding of fact number 20, that the clerk had told respondent she would allow commissions in the amount of ten percent of receipts and disbursements with five percent being attributable to executor's commission and five percent attributable to legal fees, the conclusion of law merely confirms that the amount paid was within the amount approved by the clerk, the reasonableness of which was not for consideration in this proceeding. We have already addressed petitioners' argument concerning parol evidence.

[6] Petitioners next argue that the clerk erred in basing the amount of attorney's fees on the size of the estate. The clerk testified that she allowed a fee of five percent of receipts and expenditures. The actual payment was slightly less than that amount. We agree with petitioners that fees awarded under G.S. 28A-23-4 should be for actual services rendered and should not be based solely upon the size of the estate. Nevertheless, the size of the estate provides a useful guideline and may be considered as a factor in determining whether legal services were necessary and the time expended justified.

[7] Petitioners' reliance on *In re Moore*, 292 N.C. 58, 231 S.E. 2d 849 (1977), to support this argument is again misplaced. In *Moore*, the legal fee being challenged was not for legal services rendered in administrating the estate, but rather for services to the person named as executor in the will in defending a challenge to his qualifying as personal representative. Our Supreme Court stated that, in that context, for the trial judge to consider the size and complexity of the estate was improper and the Court directed that the legal fee be based on services rendered. The legal services rendered in *Moore* had no relationship to the size and com-

plexity of the estate. Because the amount of the fee is not being reviewed on this appeal, we find no reversible error in the award of a fee based on a percentage of the estate.

[8] Petitioners finally assign error to the signing and entry of the order as being contrary to law. This argument is premised on the theory that respondent obtained no approval for payment of legal fees and that this case is controlled by *In re Estate of Longest*, 74 N.C. App. 386, 328 S.E. 2d 804. *Longest* is distinguishable, however, for the reason that in *Longest* the clerk sent the executor repeated notices to file a petition for approval of the fees he was drawing from the estate. The executor ignored these notices but continued to pay himself fees. The line of cases interpreting G.S. 28A-9-1 is clear that the clerk must remove a personal representative when the clerk finds "the omission of duty is sufficiently grave to materially injure or endanger the estate, or if compliance with the orders of the court in the supervision and correction of the administration are not promptly obeyed." *Jones v. Palmer*, 215 N.C. at 699, 25 S.E. 2d at 852. The clerk in this case testified she approved commissions equal to ten percent—five percent for attorney's fees. The credibility of the testimony is for the trier of fact to decide. *Knutton v. Cofield*, 273 N.C. 355, 359, 160 S.E. 2d 29, 33 (1968).

Based on the foregoing, we affirm the judge's order denying the petition to revoke respondent's Letters Testamentary. In so doing, we emphasize that we are not expressing approval of the manner in which either respondent or the clerk handled the legal fee in this estate. Our decision is limited solely to the issue of the revocation of respondent's Letters Testamentary. Neither our decision nor the order of the judge below will preclude petitioners from challenging the amount of the fee or seeking damages in a separate proceeding. *See Shelton v. Fairley*, 72 N.C. App. 1, 6-7, 323 S.E. 2d 410, 415 (1984), *disc. rev. denied*, 313 N.C. 509, 329 S.E. 2d 394 (1985).

Affirmed.

Judge WELLS concurs and files a concurring opinion.

Judge ORR dissents.

Matthews v. Watkins

Judge WELLS concurring.

The dissent in this case emphasizes that the approval by Clerk Nelms of attorney's fees to respondent's law firm lacked the "specificity" required by G.S. § 28A-23-4. The issue of "specificity" was stipulated by the parties to be the subject of a separate proceeding and was not attempted to be settled in this case. The question as to attorney's fees presented in this case was not how much was proper, but whether *any* attorney's fee was properly allowed. It being undisputed that Clerk Nelms exercised her judgment to allow an attorney's fee, Judge Hobgood properly resolved *that issue* in favor of respondent.

Judge ORR dissenting.

The majority fails, in my opinion, to correctly address a substantial issue raised by the petitioners and ruled upon by the trial court. In the petition it is alleged that the payment of attorney's fees by the executor was "wrongful and in violation of the provisions of N.C. Gen. Stat. § 28A-23-4 . . . ." That statute says:

> The clerk of superior court, in his discretion, is authorized and empowered to allow counsel fees to an attorney serving as a personal representative, collector or public administrator (in addition to the commissions allowed him as such representative, collector or public administrator) where such attorney in behalf of the estate he represents renders professional services, as an attorney, which are beyond the ordinary routine of administration and of a type which would reasonably justify the retention of legal counsel by any such representative, collector or public administrator not himself licensed to practice law.

N.C.G.S. § 28A-23-4 (1984).

The majority's interpretation of a stipulation by the parties that the amount or reasonableness of the legal fee was not at issue in this proceeding is, in my opinion, incorrect. As noted by the majority, the record also reflects that the parties agreed that the proceeding raised the issue as to whether the executor was entitled to any fee and illegally took it by virtue of the failure to comply with N.C.G.S. § 28A-23-4. Therefore, I view the resolution

of the issue of compliance with N.C.G.S. § 28A-23-4 as being necessary to decide this case. For the reasons set forth below, I dissent on the grounds that the trial court erred in its ruling on this issue and should be reversed.

I.

An executor is a fiduciary to the beneficiaries of an estate. *Fortune v. First Union Nat. Bank,* 87 N.C. App. 1, 359 S.E. 2d 801 (1987); N.C.G.S. § 32-2(a) (1984). As such, an executor must act in good faith and may never paramount his own personal interest over the interest of those for whom he has chosen to act. *Miller v. McLean,* 252 N.C. 171, 113 S.E. 2d 359 (1960); *Moore v. Bryson,* 11 N.C. App. 260, 181 S.E. 2d 113 (1971).

"Both by law and the words of his oath [an executor] must faithfully execute the trust imposed in him. He must be impartial. He cannot use his office for his personal benefit." *In re Moore,* 25 N.C. App. 36, 40, 212 S.E. 2d 184, 187, *cert. denied,* 287 N.C. 259, 214 S.E. 2d 430 (1975), *quoting, In re Will of Covington,* 252 N.C. 551, 553, 114 S.E. 2d 261, 263 (1960); N.C.G.S. § 11-11 (1986).

In the present case, petitioners argue respondent engaged in self-dealing and, thus, breached his fiduciary duty as executor by paying estate monies to a law firm of which he was a principal for unnecessary and nonexistent legal services.

It is well established that when an executor also serves as an attorney to an estate, and is paid separately for the two services, a potential risk of self-dealing arises. Annot. "Personal Representative — Compensation," 65 A.L.R. 2d 809 (1959). The risk inherent in this situation is that the executor will deplete the assets of the estate through payments to himself for unnecessary work or for excessive legal fees. *Id.* Payments to a law firm, of which an executor is a principal, are viewed the same as payments made directly to the executor acting as the estate's attorney, because in either situation the executor will receive compensation beyond that received for his duties as executor. Annot. "Personal Representative — Compensation," 65 A.L.R. 2d 809 § 6 (1959); 33 C.J.S. *Executors and Administrators* § 223(2) (1942).

In North Carolina the potential for self-dealing, when an executor serves as estate attorney, was recognized in *Lightner v. Boone,* 221 N.C. 78, 19 S.E. 2d 144 (1942), which says:

When a lawyer voluntarily becomes executor he takes the office *cum onere,* and although he exercises his professional skill in conducting the estate he does not thereby entitle himself to compensation beyond the amount ordinarily allowed to an executor or an administrator. . . .

'In the absence of statute, the general rule is that where a lawyer becomes executor or administrator, his compensation as such is in full for his services, although he exercises his professional skill therein; and even if he performs duties which he might properly have hired an attorney to perform, he is not entitled to attorneys' fees.' . . . The rule is one of public policy, grounded upon the principle that a trustee shall not place himself in a situation where his interests conflict with his duties as fiduciary. . . . It has been said that if an executor chooses to exercise his professional skill as a lawyer in the business of the estate, it must be considered a gratuity, and that to allow him to become his own client and charge for professional services would be holding out inducements for professional men to seek such representative places to increase their professional business which would lead to most pernicious results.

221 N.C. at 86, 19 S.E. 2d at 150 (citations omitted).

The North Carolina legislature in 1957 enacted the predecessor to the current N.C.G.S. § 28A-23-4, and altered the law on this question by allowing attorney executors to also pay themselves legal fees under certain circumstances. As noted before, the statute provides that the payment of attorney's fees must be authorized by the clerk of superior court, sitting as probate judge. Second, before the clerk may order fees paid, he must find: (1) that the executor rendered professional legal services to the estate, (2) that these legal services were beyond ordinary routine estate administration, and (3) that a non-attorney executor would be reasonably justified in retaining an attorney to perform the same services for the estate. If a clerk fails to find all of the requirements stated above, he would not be authorized under N.C.G.S. § 28A-23-4 to allow the payment of attorney's fees to an executor-attorney.

## II.

On appeal petitioners argue that the evidence before Granville Superior Court Clerk Mary Ruth Nelms failed to establish the N.C.G.S. § 28A-23-4 factors. Accordingly, petitioners contend that there was insufficient evidence for the trial court's findings of fact and conclusions of law. These findings and conclusions hold that Clerk Nelms properly authorized the payment of attorney's fees to respondent's law firm and that respondent did not breach his fiduciary duty by requesting and paying these fees.

In reviewing this argument, a close examination of the testimony must be considered.

### A.

Clerk Nelms oversaw probate of the Davis estate and verified the final estate accounting, which included the payments to respondent's law firm. She testified that during the estate administration she met periodically with respondent to discuss his actions, and she regularly telephoned respondent and his secretary concerning the estate.

Regarding respondent's petition for attorney's fees, Clerk Nelms testified that in November or December of 1985 she and respondent discussed the work he had performed during the estate administration and the commissions to be paid by the estate for his work.

Clerk Nelms described the discussion as follows:

Well, on that particular day the best I can recall I know that Mr. Watkins and Mrs. Bernard came into my office, and Mr. Watkins said that he wanted to talk to me about the attorneys, the commissions, in the estate because it would soon be time to file the Federal tax returns and they needed to be thinking about what they had to do;

And so we discussed the estate just like we had from the very beginning, because even the day we qualified we discussed the, how large the estate was, and what a tremendous amount of work was involved in the administration of it;

And we went over what had, some of the things that had been done and the things that were needed to be done;

And so I have made a little list of the different things that I knew that we tried to talk about. Of course, since '85 it's hard for me to remember everything that we discussed, Your Honor.

They had to file the income tax returns for the deceased for her last year.

. . .

They had to file the Social Security and FICA returns due by the deceased. They had to negotiate, negotiations with the tenants for possession of the house and the restoration;

Collection of appraisal and security of personal property. They had to file the 90-day inventory. Private family auction of personal property.

Negotiations and sale of residence for net price above the appraised value;

Preparation and filing of the Federal tax return. This is the death return.

Preparation and filing of the estate inheritance tax return; the fiduciary tax returns;

Tax waivers. I had to get the tax waivers for the sale of the securities.

Communication with devisees regarding stock sales;

Sales of securities;

Liquidation of Mr. Luther Davis' trust account.

Negotiations and settlement of disputed certificates of deposit. There was a dispute there on certificates of deposit that they had to be resolved because of what had been the way it was stated on the certificate of deposit and the bank records which caused the tax returns to have, as I understand, to be filed twice;

And then I recall that he told me it was just hundreds and hundreds of hours that had been spent professionally in the estate;

And there were other things that had to be done, but I don't recall any of the rest of them at this time.

It's in, you know, anything in a regular routine of an estate.

When asked, "Is there any item on that list . . . that can only be rendered by a licensed attorney at law as opposed to a layman? Please answer yes or no," Clerk Nelms responded,

No. I would like to explain. . . . I would say that eighty per cent, approximately, of all the people that I deal with do not know how to deal with an estate.

The ones that tried have a hard time. They go out and they try to get a lot of people to help them with it, and then they have to end up going and getting someone.

In my opinion a layman could not have administered this estate, and he would have been required to have gotten an attorney to help him.

Next, Clerk Nelms was asked,

All right. And is that why you testified in response to Mr. Clark's question that you were going to let Mr. Watkins draw a double fee, one for being the Executor and one for being the lawyer?

Is that why you said you had agreed to that? To which she answered,

Yes, sir, because I—you see most people have a lawyer anyway, so they're entitled to a—a layman just would be entitled to five per cent on receipts and disbursements. . . . And then they would have had to have paid an attorney.

Then Clerk Nelms was questioned,

So in this case since Mr. Watkins didn't have to go out and hire an attorney, you decided to just let him double up because it would be the same difference anyway on somebody else?

In response Clerk Nelms said,

After discussing this with Mr. Watkins at length and going over what had to be done in this estate, all the little

things that had to be done in the estate that are not even listed, I could not even remember to tell you the things that he told me had to be done in this estate, I thought that he was entitled to what I stated this morning.

Finally, regarding the percentage and amount of commissions awarded to respondent, Clerk Nelms testified,

Well, we talked about it, and Mr. Watkins never asked for a percentage and he never asked for an amount in dollars.

We didn't never discuss what the amount in dollars would be.

And after we had gone all over all of this and knew what else had to be done in the estate, I told Mr. Watkins that I would allow him five per cent on the, on receipts and disbursements as Executor, and five per cent on receipts and disbursements on attorney's fees.

Respondent thereupon paid $89,000 to his law firm both for his commission as executor and for his and his law firm's commissions as estate attorneys.

Clerk Nelms, when questioned about legal services rendered to the Davis estate by respondent's law firm, Watkins, Finch & Hopper, said that she knew the law firm had prepared a deed for the estate. Clerk Nelms further testified that although she didn't have personal knowledge of any other legal service provided by the firm to the estate, "I do know that the attorneys, Mr. Watkins' partners, they knew what was going on at all times in the estate; [a]nd I feel that they rendered a valuable service to Mr. Watkins and to the heirs and to everyone concerned."

Clerk Nelms acknowledged that neither of respondent's petitions seeking commissions specifically requested payment for legal services. She also admitted she authorized respondent to pay his commissions before he had filed a final accounting of estate finances, and before she had fixed a dollar amount for the attorney's fees.

Finally, Clerk Nelms said she had never entered into the estate file written findings of fact explaining her decision to award respondent a commission for legal services. Nor had she

ever written into the estate file either the dollar amount or the percentage allowance she had fixed for attorney's fees.

## B.

At the hearing, respondent also testified as to the basis for his petition seeking attorney's fees. In answer to the question, "[W]hat legal services have you rendered to the estate of Annie Mae S. Davis as an attorney . . . [w]hich are beyond the ordinary routine of administering most estates?", respondent said:

> To begin with after this petition was filed I asked my law partner, Mr. Hopper, to take that, the two big files that you see down there that are part of the papers that resulting from the administration of the, this estate, and to go through them one by one and determine in his mind conservatively, extremely conservatively, as to how many hours would have to be spent performing that service as an attorney.
>
> . . . .
>
> And he estimated from going through the papers that we performed six hundred and eighty-three hours of legal service to this estate.

When asked to describe these legal services, respondent answered as follows:

> All right. Mr. Parker, the routine services of an administrator in Granville County in the thirty-five years that I've been practicing estate law; . . .
>
> From virtually what they do in the beginning, a routine executor, I mean administrator or executor, comes into your office and says, we have my father, my mother, my relative died, I want you to tell me what I've got to do;
>
> And I immediately explain how you administer an estate. One out of a hundred will not even know that you've got to carry the Will to the Courthouse to have it recorded.
>
> . . .
>
> They do not even know that you have to fill out an application for Letters Testamentary or Letters of Administration and qualify before the Clerk;

Matthews v. Watkins

And at that time you've go to know the assets of the estate, you have to advise them on all of that.

Now, because I had that knowledge over and above that of an ordinary person who would have come in to handle this estate does not mean that I don't get compensated for it.

. . .

And that's part of an attorney's duty; and that's what we had to do in this that's not normal routine duties of an administrator.

. . .

And we did that and got the application ready and went up to qualify.

Now, to say all of that was duties of an administrator or an executor is absolutely routine duties is absolutely erroneous.

. . .

I'm telling you what I performed. I performed those services.

When asked, "Weren't all of those things part of the ordinary routine administration of an estate?", respondent explained,

No, sir. Not by the administrator, not by the executor, it's not routine things performed by the ninety-nine per cent of the executors and administrators of an estate.

. . .

You asked me what legal duties I performed.

I performed all legal duties that were not routine duties of an executor or administrator; and I'm enumerating what are not routine duties of an administrator or an executor.

Responding to the question, "What did you do in those six hundred and eighty-three hours' worth of services which were beyond the ordinary routine of estate administration and which involved your services as an attorney?", respondent testified:

All right, sir. Now, Mr. Parker, you know and I know and everybody else with any reasonable amount of intelli-

gence knows that I cannot sit here on this witness stand without any reference whatsoever and tell you everything I did as an attorney.

I can do it better by comparison than anything else.

. . .

The only—when you do not intend to charge by the hour but you intend to charge for the responsibility that you're subjected to, and some of that responsibility is being paid for just where I'm sitting today.

Every time I serve as an attorney for an estate I'm subjected to the possibility that someone will not think that I, that I did as much work, who do not know what I do, and will want to question me and bring me before the Court and allege embarrassing things about me, that's part of what I get paid for as an attorney;

And I think you have to be compensated well for such things to occur to you;

And that's part of what—and I haven't even included that in the six hundred and eighty-three hours of legal services, and that's as much a part of a legal service as anything else you do.

Respondent further told the court at the hearing that the above testimony, concerning his petition for attorney's fees, was evidence sufficient to satisfy the requirements of N.C.G.S. § 28A-23-4.

## C.

Respondent's two law partners, William Hopper and Dennis Finch, also discussed the legal services they each had provided to the estate.

Mr. Hopper said he had been consulted by respondent on the following issues of estate administration: (1) the eviction of a tenant; (2) the transfer of stock; (3) the release of trust funds; (4) the appraisal, sale and distribution of personalty; and (5) the sale of real property. Mr. Hopper testified that he had kept no record of the time involved in these consultations, and that he had no opinion as to the value of his services.

In addition, Mr. Finch said he had been consulted by respondent concerning the estate once on the issue of survivorship rights to an estate certificate of deposit and several times in general conversations. Mr. Finch estimated that he had spent less than eight hours working on the survivorship rights issue, and he further said he was unable to recall the amount of time he had spent with the other consultations.

### D.

Based on the testimony discussed above, Judge Hobgood made findings of fact, including the following:

> In October or November of 1985, Mary Ruth C. Nelms had a conference in her office with William T. Watkins concerning commissions and fees. William T. Watkins told Mrs. Nelms that he wanted to talk about commissions because it would soon be time to file Federal estate tax returns and State inheritance tax returns. Mr. Watkins never suggested or asked for any specific amount in terms of percentage or dollars. Mrs. Nelms knew at that time the various work, time and attention this estate had required of William T. Watkins and the law firm of Watkins, Finch and Hopper. Mrs. Nelms testified at this hearing that William T. Watkins had worked on this estate hundreds and hundreds of hours. Mrs. Nelms told William T. Watkins at that conference in October or November of 1985, that she would allow him a five per cent commission as Executor and that she would allow a five per cent commission as attorney fees.

> That since October or November, 1985, it has been the intent of Mary Ruth C. Nelms, Granville County Clerk of Superior Court, that she would allow total commissions to William T. Watkins and the law firm of Watkins, Finch and Hopper in the amount of 10 per cent of receipts and expenditures, which constituted five per cent of receipts and expenditures as Executor's commission and five per cent of receipts and expenditures for professional services as an attorney beyond the ordinary routine of estate administration. Mrs. Nelms told William T. Watkins of this intent in October or November of 1985.

Judge Hobgood then concluded as a matter of law:

1. Mary Ruth C. Nelms, Granville County Clerk of Superior Court, by her verbal instructions to William T. Watkins in October or November of 1985, by her written orders of December 11, 1985, and September 16, 1986, and by her approval of the annual account which was filed June 17, 1987, has approved a total payment of commissions to William T. Watkins and the law firm of Watkins, Finch and Hopper from this estate in the amount of $89,000.00 in accordance with North Carolina General Statutes Section 28A-23-3 and Section 28A-23-4.

2. The petitioners, the residuary heirs under the will, having failed to show that the Granville County Clerk of Superior Court did not approve the payment of commissions to William T. Watkins and the law firm of Watkins, Finch and Hopper cannot prevail on the contention that said total payments were wrongful and in violation of North Carolina General Statutes Section 28A-23-4.

3. That there is evidence to support the payment of commissions pursuant to North Carolina General Statutes Section 28A-23-4, in that William T. Watkins and the law firm of Watkins, Finch and Hopper rendered professional services as attorneys to the estate which were beyond the ordinary routine of estate administration.

. . .

5. That the actions of William T. Watkins as Executor do not constitute default or misconduct in an individual capacity or in a fiduciary capacity.

. . .

### III.

In examining the case before us, the fundamental distinction between a non-attorney executor and an attorney executor is critical. Clearly, a non-attorney executor, subject to normal fiduciary responsibilities, can hire an attorney to handle all or part of the duties associated with the routine administration of an estate and pay legal fees so incurred while still receiving compensation for his duties as executor.

An attorney executor may draw his full commission like any other non-attorney executor, for serving as executor, but in order to receive legal fees in addition to that, he must meet the test set forth in N.C.G.S. § 28A-23-4.

To meet the first part of the test, then, an attorney executor must specifically show to the clerk that the services rendered to the estate as an attorney were beyond the ordinary routine of administration. Secondly, the attorney executor must specifically show that a non-attorney executor would have been reasonably justified in retaining counsel to handle the specific work.

Only when this two-pronged statutory test has been met, may the clerk of court approve the payment of legal fees to an attorney executor. We must now consider the evidence in the record as previously set out to see if this test was met.

Clerk Nelms' testimony failed to identify what specific types of legal services were provided to the estate; why these services were beyond ordinary routine estate administration; who performed these services; and why the services required the assistance of a licensed attorney.

In addition, Clerk Nelms' testimony was unsubstantiated by any written documentation from or by respondent, a fundamental requirement when requesting legal fees be approved by a court official. The Davis estate file maintained by Clerk Nelms contained no information specifying what legal services were performed on behalf of the estate that would justify a finding of the N.C.G.S. § 28A-23-4 factors and entitle respondent and his law firm to attorney's fees.

Furthermore, the testimony of respondent was inadequate to meet the test set out in N.C.G.S. § 28A-23-4. Respondent's testimony, like that of Clerk Nelms, was general in scope, lacking the specificity necessary to determine the exact legal services he had performed and failing to explain why the legal services exceeded routine estate administration. Neither did respondent produce records, documenting the nature of the legal services rendered and the time required to perform those services to Clerk Nelms with his petition.

It would appear from respondent's testimony that in his opinion the estate was complex and not one that could be handled by

a non-lawyer, thus justifying the use of legal services. Such may well be the case if the executor in the case *sub judice* had been a non-attorney.

However, as noted previously, the standard is different, and appropriately more stringent, for an attorney who also is serving as executor and being compensated for his duties in that position. As respondent's testimony shows, the evidence he presented to Clerk Nelms and to Judge Hobgood lacked the specificity necessary to establish a basis for his petition seeking attorney's fees. Likewise, the testimony of Mr. Hopper and Mr. Finch also was insufficient to support respondent's petition for attorney's fees. While their combined testimony indicated they had each performed minor legal services for the estate, this testimony failed to address the standards set out above and for entitlement to legal fees.

## IV.

Therefore, I conclude that based on the evidence produced at the hearing below the clerk was not authorized to approve the payment of counsel fees to respondent's law firm, since the requirements of N.C.G.S. § 28A-23-4 were not met. Therefore, respondent's payment of fees to his law firm was unauthorized. To that end, in my opinion, the trial court committed reversible error and this matter should be remanded.