Nash, J.
 

 John McLean, by his last will, bequeathed to the plaintiff as follows: “I give and bequeath to Samuel Kerr, son of N. H. Kerr, deceased, five hundred dollars, to remain in the hands of my executors, to be applied in assisting to give him a liberal education/’^^^rii}*t?!&§duly proved, and the defendants qualified^ tóSfeSt^s&^'Bfee estate consisted, principally, of bondad nmes, and open accounts, which were taken into posseafitonTjfry - ants, and divided between them; anfl eacn collected tl® money due on the papers respective!!' r Í§®nín.J-The defendant, McLean, retained in Kighands, thgjWnds to pay the plaintiff’s legacy. Kirkpatrick lias mffy administered all the assets which came to his hands, in the payment of debts and legacies. McLean is insolvent, and the plaintiff’s legacy is unpaid ; and he seeks to recover it from Kirkpatrick. The bill charges, that the plaintiff is entitled to recover it from either, or both of the defendants, "'because they jointly acted in the affairs of the estate;
 
 *138
 
 they both collected funds and paid over legacies ; that Kirkpatrick is responsible, although McLean might have spent a portion of the assets of the estate, and become insolvent, because it was his duty to see to the affairs of his co trustee, and to see that he did not waste the estate.” It prays for an account. &c.
 

 The answer of Kirkpatrick states, that at the time John Mitchell died, he was sick in bed ; and that the portion' of the bonds and notes, which were in his hands, were delivered over to him by Joseph A. McLean, between five and six weeks after the testator’s death ; and that he has fully and properly administered the whole. He further states, that funds were retained by McLean in his hands to pay the plaintiff’s. legacy. It further alleges, that the plaintiff boarded with McLean one year in Greensboro’, for the purpose of going to school; and that the latter also paid his tuition.
 

 The answer of McLean is
 
 to
 
 the same effect.
 

 In the argument before us; it was fully admitted, that the defendant;, Kirkpatrick, had fully and properly administered all the assets of the testator,-which had come to his . hands ; and- his accountability for the
 
 devastavit
 
 of his co- •' trustee, was frankly put upon the ground, that, as a co-trustee, it was his duty to have taken care that McLean . did not abuse his trust. The bill is framed upon that prin-, ciple.- In the charging part, it alleges, “ that the defendants are liable to the plaintiff, because they jointly acted in the affairs of the estate : they both collected funds, and paid over legacies ; that Joseph Kirkpatrick is responsible,although McLean may have spent a portion of the assets,-, and become insolvent, because it was his duty to see to the.-affairs of his co-exec-utor, and to see that, he did not waste-■ the estate.” There is no specific joint act of Kirk-patric.k , charged; and relief i-s sought against him upon; the-gene-•
 
 *139
 
 ral grounds stated. Are they sufficient to make him responsible? We are clearly of opinion they are not. The estate consisted, as is admitted, principally of bonds, notes and accounts. It was highly proper, if not necessary, for the executors' to divide between them these evidences of debt, both for the purpose of collection and disbursement. They could not, from the nature of these assets,
 
 hold
 
 them jointly. When, therefore, a division was made, there was in it no impropriety. Neither did anything out of the usual course of managing such matters. This is the only act 'set forth in the bill, upon which to rest the charge of a joint administration of the assets. It was further admitted, that McLean had retained in his hands the fund to discharge the plaintiff’s legacy. The defendants were joint trustees for the management of that fund ; and, so far as they did join in administering it, each is responsible lor the miscon'duct of the other. The answer of Kirkpatrick, which is responsive to the bill, and is not contradicted by any testimony, alleges, that, at the time John Mitchell died, he was sick in bed, and that if was not until after the lapse of five or six weeks, that he went to the house where he died, and that he there received from his co executor some of the papers' belonging to the estate. He had, therefore, no hand or agency in placing any of the bonds and notes in the hands of McLean; nor had he any right to take them from him. Each had an entire control over the assets retained by him, so far as the other was concerned. Even joining in a receipt does not, of itself, subject the trustee, not receiving, to a responsibility for the act'of the other. And the reason assigned is, as each trustee has not the whole power to act, the joining in the receipt is á necessary act, and doing so, without more, is considered mere formality. 2 Wills, on Ex’r, 1125; and such is the law, as applied to executors, do, 1118. Each, under ordinary ctr-
 
 *140
 
 cumstances, is answerable only for the assets which came into his own hands.
 

 It is, however, charged to have been the duty of Kirkpatrick, “ to see to the affairs of McLean, and see that he did not waste the assets in his possession.” This would clearly be at war with the principles above stated. McLean had a right to hold in his hands, so far as Kirkpatrick was concerned, all the funds he possessed; and the latter had no power to withdraw them — it was a joint trust and a personal one The testator had a right to make the appointment to McLean, even if he had known that he was insolvent, and we know of no principle of Equity, which requires that one trustee is bound to keep a supervision over the acts of another, when he has not made himself liable to answer for his acts. The whole ground occupied by this case, is covered by that of
 
 Ochiltree
 
 v
 
 Wright and Beck,
 
 1 Dev and Bat. 338. In that case the defendants, who were executors, had joined in signing the inventory and account of sales ; and Wright, against whom the relief was sought, Beck having left the country, had assented to the sales The bill was dismissed as to Wright, upon the ground, that the signing the account of sales was merely in conformity to the law, and there was nothing to show that he had any control over the assets, which were in the hands of Beck. In this case, Kirkpatrick was a curator or trustee of the fund, but is answerable only for that part of it which came to his hands, or was under his control. McLean stood in the same relation to it, and with the same power and responsibility. If the confidence of the testator was misplaced, it is the misfortune of the plaintiff. Kirkpatrick had no power to deprive him of the fund which was in his possession, nor has he done anything by which the abuse of power by McLean was countenanced or facilitated He has committed no fault, w'hich, in conscience, ought to subject him to the plaintiff's claim.
 

 
 *141
 
 The plaintiff is entitled to an account; and in taking the account, the defendant, Kirkpatrick, is not to be made accountable, except for the assets that actually came to his hands.
 

 Per Curiam, ? Ordered accordingly.