IN RE: LAST WILL AND TESTAMENT OF J. B. TAYLOR, DECEASED

No. 22

(Filed 11 November 1977)

1. **Executors and Administrators § 5— revocation of letters of administration— appeal to superior court**

   Upon appeal to the superior court from the clerk's revocation of letters of administration, the trial judge may review any of the clerk's findings of fact when the finding is properly challenged by specific exception and may thereupon either affirm, modify or reverse the challenged findings. However, absent exceptions to specific findings of fact, a general exception to the judgment only presents the question of whether facts found support the conclusions of law.

2. **Executors and Administrators § 8— collection of estate assets**

   It was the duty of an administrator C.T.A. to collect the assets of the estate and to pay therefrom debts, taxes, and the cost of administration until all were paid or the assets of the estate exhausted. If the assets of the estate were not exhausted, it became his duty to distribute the remaining personalty coming into his hands in accordance with the provisions of the decedent's will.

3. **Executors and Administrators § 5.5— removal of administrator C.T.A.— misconduct— letter seeking to collect assets**

   The clerk's determination that an administrator C.T.A. should be removed because he acted in bad faith and was guilty of default or misconduct in the execution of his office was not supported by a letter from the attorney for the administrator C.T.A. to the attorney for the decedent's widow seeking to collect assets of the estate, even though the demands and contentions set forth in the letter may have been overblown and excessive.

4. **Executors and Administrators § 5.5— removal of administrator C.T.A.— late filing of accounts**

   A finding that an administrator C.T.A. had not filed his accounting on time did not support the clerk's removal of the administrator for misconduct or bad faith in carrying out his duties where there was no finding that the estate was endangered or any interested party injured by the late filing or that the administrator had failed to comply with orders of the court.

5. **Executors and Administrators § 5.4— removal of administrator C.T.A.— joint ownership of devised property**

   The fact that an administrator C.T.A. and decedent's widow owned lands which had been devised to them by decedent's will as tenants in common and the land was subject to lien did not support the clerk's removal of the administrator on the ground that he had a private interest which would hinder his proper administration of the estate.

APPEAL by petitioner from judgment of *McLelland, J.,* 14 June 1976 Session of ORANGE Superior Court.

J. B. Taylor died testate in Orange County on 31 January 1973. His widow, Mary R. Taylor, renounced her right to qualify as Executrix of his estate, and on 9 July 1973 D. Wayne Taylor was appointed Administrator C.T.A. of the estate of J. B. Taylor. Thereafter, Mrs. Taylor filed a dissent from her husband's will and also filed a caveat to the will alleging mental incapacity and undue influence. The propounders of the will prevailed, and the caveator did not perfect a notice of appeal. On 3 February 1976, Mr. Thomas Cooper, attorney for the Administrator C.T.A., wrote a letter concerning the administration of the estate to Mr. Lucius M. Cheshire, attorney for Mrs. Taylor. Since this letter appears to be the principal basis for the petition for removal, we deem it necessary to quote its entire text.

February 3, 1976

Mr. Lucius M. Cheshire
Graham & Cheshire
Hillsborough, N.C. 27278

Re: Estate of J. B. Taylor

Dear Lucius:

This will acknowledge receipt of and thank you for your letter of December 31, 1975 enclosing photocopy of items purporting to represent all of the personal property at the home of J. B. Taylor.

It is obvious that this list does not represent ALL of the items at the home. For instance: we feel that there are many items at the house that have not been listed at all, such as a breakfront secretary, cast iron pots and kettles, shipaugers, planes, hammers, axes and other tools, mowing machine, spoke shaving bench, clocks, pictures, Bibles, etc. We feel that there are many antique items there at the house which would be of some value at such time as the administrator had his sale. We would also need to know, and have a list of, the items which were there at Mr. Taylor's death and, according to our information, are no longer there, such as a cider mill and the Maris book. In summary, we need additional lists of what items are physically there that she has not listed, and what items she has disposed of since the death of J. B. Taylor and the price therefor.

In addition, we will have to determine the amount of rent chargeable to your client for the use of the land and the house. We also need an accounting of such profits as she has made from the use of the land. We need to know the value of the crops there at Mr. Taylor's death, the disposition of them and the price received therefor. We feel that the administrator is also required by law to charge your client with waste for her refusal to allow some of the land to be rented.

Specifically, as concerns the list which you furnished us; we would agree with her statement of ownership with the following exceptions:

3 beds
1 kitchen range
hot water heater
refrigerator
dining room table and chairs
tractor
tractor plow
harrow
corn sheller

The administrator contests that she owns half of these items, contending that all of these items were there when she took up residence at the house and some of these items were owned half by Mr. J. B. Taylor and half by Wayne Taylor's father.

With respect to the "some mixed old dishes—no complete sets", we would contend that ALL eating utensils, including pots and pans and cutlery belong to the estate.

With respect to the tractor, it is the contention of the administrator that putting new tires on the tractor and paying for repairing the same would not be considered preservation of the estate. Assuming for the sake of argument that she purchased new tires and paid for repairing the tractor, she would still owe the estate for rent for the use of the tractor and the two items would very probably wash out.

With respect to the chickens and cows, we would agree that these items belong to her, but feel again that she should account to the estate for all estate property used in con-

nection with the animals, including feed, grain, pasture rent, etc.

It is our suggestion that you specify a date, within ten days, at which time the administrator and a disinterested person, preferably one of the deputy clerks, could go to the property and make a physical inventory of every item that is located there. If there is any question about items that might be missing, in the absence of our failure to agree on such items and the value thereof, we would propose to examine Mrs. Taylor under oath as allowed by G.S. 28-69 as to such items. If we cannot agree on the taking of a physical inventory and agreement as to such items as may be missing, we would propose to apply to the Clerk for an Order directing Mrs. Taylor to allow such inventory and then appearing before him for examination under oath.

It is my hope, and that of Wayne, that we will be able to settle this matter without too many more appearances before the Clerk and the Court. Wayne has a legal obligation as administrator to account for ALL items in the estate. He also has the heirs breathing down his neck continually about old family items which may be put up for sale and which members of the family want. It is absolutely necessary that he account to the heirs for every item that someone may remember. We would appreciate very much your discussing with your client the possibility of coming to a reasonable agreement that will satisfy the legal requirements and still be something that everyone can live with. If this cannot be done, it's beginning to look as though the entire estate may be dissipated in Court costs and lawyers' fees. We will appreciate very much your going over all the matters in this letter with your client and advising us of your decision as soon as possible.

With kind personal regards.

Very truly yours,

s/ THOMAS D. COOPER, JR.
for the firm
LATHAM, WOOD AND COOPER

On 4 March 1976, the Administrator C.T.A. filed a motion in which he alleged that he had been unable to obtain an accounting from Mary Taylor for personal property belonging to the estate and for rents and profits due the estate from the real property which she occupied. He prayed that, pursuant to G.S. 28-69, Mary Taylor be ordered to appear before the Clerk of Superior Court of Orange County for examination concerning property belonging to the estate. On 11 March 1976, Mary Taylor filed a petition requesting the Clerk to remove D. Wayne Taylor as Executor pursuant to G.S. 28-32 on the grounds that (1) he had not filed his accounting on time, (2) he had evidenced bad faith by asserting baseless claims to the effect that she had committed waste, (3) he had also exhibited bad faith in harassing petitioner by claiming for the estate property which belonged to her. Respondent answered and denied any act of bad faith and asserted that his actions were in accord with his duty to collect and preserve the assets of the estate.

A hearing on both motions was held before the Clerk of Superior Court of Orange County on 8 April 1976, and after hearing evidence and arguments of counsel, the Clerk announced that the past due account had been filed by the Administrator C.T.A. and had been audited and approved on that date. He stated that he found no prejudice to anyone as a result of the late filing. The Clerk further stated that he was denying Mrs. Taylor's petition to remove the Administrator C.T.A. and indicated that an inventory would be taken under the supervision of his office. The Administrator C.T.A. tendered orders consistent with the Clerk's oral decisions, but the Clerk refused to sign the orders. He thereupon set another hearing for 26 April 1976 and on that date heard one witness who testified concerning the existence of one piece of furniture. On 29 April 1976, the Clerk, after finding facts and entering conclusions of law, signed an order revoking the letters of administration issued to D. Wayne Taylor. Pertinent findings of fact and conclusions of law contained in that order are as follows:

5. That the aforesaid letter asserted that the widow, Mary R. Taylor, had supplied to the administrator a list of certain items of personal property at the J. B. Taylor home and that the list had not included many items; that among said items the letter set forth a breakfront secretary, ham-

mers, axes, and numerous other items as will be reflected by said letter.

6. That D. Wayne Taylor, Administrator C.T.A., conferred with his attorney, Mr. Thomas D. Cooper, Jr., prior to the date of said letter and that said letter was written as a result of said conference.

7. That D. Wayne Taylor, Administrator C.T.A., testified that he had been in the J. B. Taylor's homeplace on frequent occasions before the said J. B. Taylor's death and could not remember whether he had seen the breakfront secretary referred to in the February 3rd letter at the time of Mr. Taylor's death, within six months prior to J. B. Taylor's death, or within one year prior to J. B. Taylor's death.

8. That the February 3rd letter stated that the administrator would be required by law to charge Mary R. Taylor with waste for "her refusal to allow some of the land to be rented". That all of the evidence was to the effect that the only refusal on anyone's part to allow the rental of any of the J. B. Taylor farm or the allotments thereon was the refusal of D. Wayne Taylor, Administrator C.T.A., to allow the tobacco allotment to be rented for the crop year immediately after the death of J. B. Taylor and that the crop allotments have not been rented since said refusal by the Administrator, C.T.A.

9. That the letter of February 3, 1976, stated that rent would be chargeable to Mary R. Taylor for her use of the land and house.

10. That the letter further stated that "we would contend that ALL eating utensils, including pots and pans and cutlery belonged to the estate".

11. That during the course of the inquiry conducted by the Court to determine what responsibility the Administrator C.T.A. had for the assertions contained in the letter of February 3, 1976, the Administrator C.T.A., through his counsel, pleaded the lawyer-client privilege and refused to answer questions directed toward discovering the extent, if any, the Administrator C.T.A. was responsible for the assertions contained in said letter.

12. That the petitioner, Mary R. Taylor, and the Administrator C.T.A., D. Wayne Taylor, are tenants in common of certain lands which belong to J. B. Taylor, deceased, at the time of his death which had vested in said parties as the result of the death of J. B. Taylor, which lands are subject to a lien for such debts of the estate of J. B. Taylor, as the personalty of said estate is insufficient to pay, and that there are insufficient personal assets with which to pay the debts of the estate.

Upon such findings of fact, the court concludes as a matter of law:

1. That there is evidence of bad faith on the part of the Administrator C.T.A. in carrying out his fiduciary duties.

2. That the said D. Wayne Taylor, Administrator C.T.A. has been guilty of misconduct in the execution of his office other than acts specified in G.S. 28(a)-9-2.

3. That D. Wayne Taylor, Administrator C.T.A., has a private interest that might tend to hinder or be adverse to a fair and proper administration of the estate.

The Administrator C.T.A. excepted to each of the above findings and conclusions and duly gave notice of appeal to the Superior Court.

This matter came on to be heard before Judge McLelland, and, after reviewing the file and hearing arguments of counsel, he reversed the order of the Clerk removing D. Wayne Taylor as Administrator C.T.A. of the estate of J. B. Taylor. Judge McLelland further ordered the Clerk to issue process requiring petitioner to disclose to the Administrator C.T.A. information sufficient to enable him to complete an accurate inventory of the estate. Petitioner appealed.

The Court of Appeals affirmed the judgment entered by Judge McLelland and we allowed petitioner's petition for discretionary review on 3 May 1977.

*Graham, Manning, Cheshire & Jackson, by Lucius M. Cheshire, for petitioner-appellant.*

*Latham & Wood, by B. F. Wood, for respondent-appellee.*

BRANCH, Justice.

We note that the Court of Appeals decided this case upon the assumption that the statutory provisions of Chapter 28A were applicable. Chapter 1329 of the Session Laws of 1973 repealed Chapter 28 and enacted Chapter 28A in lieu thereof. Section 5 of Chapter 1329 provides: "This act shall be effective on and after July 1, 1975." Chapter 19, Section 12 of the Session Laws of 1975 stated: "Section 5 of Chapter 1329 of the 1973 Session Laws is hereby amended following the word 'effective' by inserting the words 'as to the estates of decedents dying'." This act became effective on 27 February 1975. Chapter 1329 of the 1973 Session Laws was again amended by the 1975 Legislature by the enactment of Chapter 118 which provided:

> Section 1. Chapter 1329 of the Session Laws of 1973, codified as Chapter 28A of the General Statutes, entitled "Administration of Decedents' Estates", is amended by changing the effective date in Section 5 thereof from "July 1, 1975" to "October 1, 1975".

> Sec. 2. This act shall become effective upon ratification.

> In the General Assembly read three times and ratified, this the 9th day of April, 1975.

The language of Chapter 118 of the 1975 Session Laws could be interpreted to mean that Chapter 28A became effective, without limitation, on 1 October 1975; however, in view of the fact that the last enactment in Chapter 118 did not repeal Chapter 19, Section 12, of the 1975 Session Laws, we conclude that the Legislature intended to only insert the date October 1, 1975, in lieu of the date July 1, 1975. Thus, Section 5 of Chapter 1329 of the 1973 Session Laws as amended would now read as follows: "Sec. 5. This act shall be effective as to the estates of decedents dying on and after October 1, 1975." Since decedent J. B. Taylor died in 1973, the relevant statutes in Chapter 28 would still be applicable to decision of this appeal.

The sole question presented by this appeal is whether the trial judge erred in concluding that the findings of fact in the Clerk's order of 29 April 1976 did not support the conclusions of law entered therein.

G.S. 28-32, in pertinent part provides for the revocation of letters of administration by a Clerk of Superior Court when the administrator "has been guilty of default or misconduct in due execution of his office." The other causes for revocation of letters of administration set forth in that statute do not apply to the facts before us.

[1] When the Clerk exercises the powers of revocation vested in him by this statute, his action is reviewable on appeal. *In Re Estate of Galloway*, 229 N.C. 547, 50 S.E. 2d 563. Upon appeal to the Superior Court, the trial judge may review any of the Clerk's findings of fact when the finding is properly challenged by specific exception and may thereupon either affirm, modify or reverse the challenged findings. However, absent exceptions to specific findings of fact, a general exception to the judgment only presents the question of whether facts found support the conclusions of law. *In Re Estate of Lowther*, 271 N.C. 345, 156 S.E. 2d 693. In the case before us, specific exceptions were taken to each of the crucial findings of fact.

It is obvious that petitioner relies principally upon her Exhibit 1, the letter from attorney Cooper to attorney Cheshire, to support her motion to remove. She argues that the content of this letter shows respondent to be so partial, biased and lacking in integrity that he should be removed from his office as Administrator C.T.A. It is true that this Court has consistently approved the removal of administrators and executors who were guilty of default or misconduct in the execution of the duties of their office. This Court found no error in the removal of an executor who refused to pay the widow her share from the sale of personalty of the estate and arbitrarily commingled her funds with estate funds. *In Re Estate of Boyles*, 243 N.C. 279, 90 S.E. 2d 399. This Court has also upheld removal of an administrator who obtained a contract from an illiterate widow which granted to him and another person 25 percent of the assets of the estate in addition to the legal fees allowed him by law. *In Re Battle*, 158 N.C. 388, 74 S.E. 23. It is apparent that each of the cases above reviewed involves default in the execution of the duties of the office of administrator or executor or involve actual misconduct. The facts of these cases are a far cry from the actions of respondent as revealed by the contents of petitioner's Exhibit 1 and the Clerk's findings based thereon.

[2] Upon his appointment and qualification as Administrator C.T.A., it became the duty of respondent to collect the assets of the estate and to pay therefrom debts, taxes, and cost of administration until all were paid or the assets of the estate exhausted. If the assets of the estate were not exhausted, it then became his duty to distribute the remaining personalty coming into his hands in accordance with the provisions of the will of J. B. Taylor. N.C. G.S. Chapter 28 (1966) (repealed 1975); 31 Am. Jur. 2d, *Executors and Administrators*, Sec. 6, page 30. It must be borne in mind that respondent owed a duty to faithfully discharge the duties of his office not only to the widow but to all persons who took under the will of J. B. Taylor.

[3] The entire content of the letter from Mr. Cooper to Mr. Cheshire was directed toward executing respondent's duty to collect the assets of the estate. Perhaps the demands and contentions set forth in the letter were overblown and excessive, but it is not unusual for counsel when dealing with adverse counsel to "puff his wares" by making strong demands and then retreating to reasonable grounds for the purpose of making settlement. Even so, it must be remembered that this was not a letter directed to an illiterate and legally unrepresented person. It was a letter from one competent, knowledgeable attorney to another competent, knowledgeable attorney. When read in context the letter is, in fact, conciliatory and expressive of a desire to follow a course which would permit respondent to speedily perform his duties without further litigation and the accompanying needless exhaustion of the funds of the estate. We, therefore, conclude that none of the Clerk's conclusions are supported by his findings numbers 4, 5, 6, 7, 8, 9 and 10. The remaining crucial findings of fact are numbers 3 and 12.

[4] Finding of fact number 3 stated:

> That D. Wayne Taylor, Administrator C.T.A., filed an annual account on the 30th day of July, 1974, and had not filed a further accounting until after the petition herein was filed; however, the Administrator C.T.A. was never notified by the Court to file an accounting.

This finding does not support conclusions 1 and 2 relating to respondent's misconduct in office or bad faith in carrying out his duties as Administrator C.T.A.

In *Jones v. Palmer*, 215 N.C. 696, 2 S.E. 2d 850, Justice Seawell speaking for the Court said:

> The clerk is not compelled to remove an administrator for failing promptly to file an inventory when in his judgment the estate has received no damage; C.S., 48, 49; nor for failure to file account; C.S., 106; nor for delay in winding up an administration. Instead of removal, the performance of all these duties may be enforced by appropriate proceeding. *Atkinson v. Ricks*, 140 N.C., 418, 53 S.E. 230; *Barnes v. Brown*, 79 N.C., 401. But he may remove an executor or administrator for such failure, and must do so when he finds the omission of duty is sufficiently grave to materially injure or endanger the estate, or if compliance with the orders of the court in the supervision and correction of the administration are not promptly obeyed.

Finding of fact number 3 does not show that the estate of J. B. Taylor was endangered or any interested party injured by the late filing of accounts. Neither does the finding show any non-compliance with orders of the court. In fact, this record at one point discloses an oral statement by the Clerk who signed the order of removal to the effect that the late filing did not harm or prejudice the estate or any interested party.

[5]   Finally, we consider finding of fact number 12. This finding simply stated that petitioner and respondent owned certain lands which had been devised to them by the last will and testament of J. B. Taylor as tenants in common, and that the land was subject to lien. If this finding supported any conclusion of law made by the Clerk, it would be conclusion number 3 which concluded that the Administrator C.T.A. had a private interest which "might tend to hinder or be adverse to a fair and proper administration of the estate."

In *Morgan v. Morgan*, 156 N.C. 169, 72 S.E. 206, an heir at law sought to remove an administrator on the ground of adverse interest because the administrator owned jointly with the estate certain personal property in which he was claiming the whole ownership. There was no evidence of bad faith or fraudulent concealment, and the administrator was holding the property intact and under bond. The clerk denied the motion to remove, and on

In re Taylor

appeal the judge of superior court reversed. This Court in reversing the superior court judgment stated:

> . . . The administrator cannot be removed solely because he has personal property in his possession in which it is claimed his intestate had a half interest, in the absence of any findings of bad faith and fraudulent concealment.

\* \* \*

> In the case at bar the distributee is at no disadvantage. He may contest the title to this property in dispute in a proceeding by himself against the defendant and his bond for a final accounting and settlement of the estate.

We fail to discern how the joint ownership of this real property would furnish any basis for finding that respondent was guilty of default or misconduct in the execution of his office as Administrator C.T.A. Petitioner was in possession of the personal property belonging to the estate and could dispute any action by which the Administrator C.T.A. sought to misuse the property. She also had a remedy against his bond if he committed any act or default in the handling of this property. Finding of fact number 12 did not support any of the Clerk's conclusions of law.

We hold that the Clerk's findings of fact would not support a conclusion that D. Wayne Taylor while acting as Administrator C.T.A. of the estate of J. B. Taylor acted in bad faith, had a private interest that would hinder the proper administration of the estate or that he was guilty of any default or misconduct in the execution of his office as Administrator C.T.A.

The decision of the Court of Appeals affirming the judgment of Judge McLelland entered on 17 June 1976 in this cause is,

Affirmed.