IN THE MATTER OF: THE ESTATE OF EDD DUDLEY MONK, Deceased

No. COA00-1244

(Filed 6 November 2001)

## 1. Estate Administration— executors—revocation of letters testamentary

The trial court did not err by affirming the clerk of court's revocation of respondent executors' letters testamentary under N.C.G.S. § 28A-9-1(a), because: (1) the clerk and the trial court found that one of the respondents has a private interest that would tend to hinder or be adverse to a fair and proper administration of the estate since respondent's mother owned 75% of the funeral home that took care of decedent's funeral; (2) the clerk and the trial court found sufficient evidence of three allegations of misconduct, including payment by the estate of attorney fees to a law firm for creation of a limited liability company which did not benefit the estate for which payment the estate was not reimbursed, payment by the estate to an insurance account for which the estate was not reimbursed although respondent asserted that decedent had no insurance, and payment by the estate to a funeral home for decedent's funeral with no itemization or other justification for its cost; and (3) the clerk and trial court found that the remaining respondent has evidenced no inclination to act independently of the other respondent and has in the past been

IN RE ESTATE OF MONK

[146 N.C. App. 695 (2001)]

required to follow specific directions of the other respondent regardless of the cost or waste involved to the estate or any dissatisfaction with such directions.

**2. Estate Administration— removal of executors—entitlement to jury—abuse of discretion standard**

The trial court did not err in a case involving removal of executors by holding that respondent executors were not entitled to have all issues of fact decided by a jury, because the decision was within the trial court's discretion and the trial court did not abuse its discretion.

Appeal by respondents from order entered 10 August 2000 by Judge Russell J. Lanier, Jr. in Duplin County Superior Court. Heard in the Court of Appeals 17 September 2001.

*Thompson & Mikitka, P.C., by E. C. Thompson, III and Susan Collins Mikitka, for petitioner-appellees.*

*Howard, Stallings, From & Hutson, P.A., by John N. Hutson, Jr. and Brian E. Moore, and Beaver, Holt, Sternlicht, Glazier, Carlin, Britton & Courie, P.A., by H. Gerald Beaver, for respondent-appellants.*

HUDSON, Judge.

Lounell Mainor and James Ervin Southerland ("Respondents") appeal from an order of the Superior Court affirming the revocation of their Letters Testamentary ("Letters") by the Clerk of the Superior Court ("the Clerk"). We affirm.

The facts and procedural history relevant to this appeal are as follows. Edd Dudley Monk ("decedent") died on 19 August 1999. His Last Will and Testament ("the Will") provided that Respondents should serve as coexecutors of his Estate.

For several years prior to decedent's death, Respondent Mainor had his Power of Attorney. Several days prior to decedent's death, Respondent Mainor wrote a check for $14,000.00 on decedent's account to the Rose Hill Funeral Home Insurance Account. Additionally, the Rose Hill Funeral Home was paid $35,865.00 for decedent's funeral. Respondent Mainor's mother owned 75% of the Rose Hill Funeral Home, and Respondent Mainor worked there on a volunteer basis. Decedent had at one time owned the funeral home.

IN RE ESTATE OF MONK

[146 N.C. App. 695 (2001)]

Decedent's will provided that certain specified lands should be sold and the proceeds distributed among the designated beneficiaries according to designated interests. Respondents created a limited liability company ("the LLC"), to which some of the lands were sold at their appraised values. Beneficiaries were given the option of buying shares in the LLC or receiving a cash amount equivalent to their designated interests in the appraised value of the land. Not all of the beneficiaries chose to buy shares in the LLC.

On 7 January 2000, Ronald Monk, Helen Newman, Robert Monk, Marion Swan, and Margaret Nixon ("Petitioners"), who were some of the beneficiaries of the Estate, filed a Petition for Revocation of Letters with the Clerk of the Duplin County Superior Court. The Clerk issued an Order Revoking Letters Testamentary on 9 March 2000. Respondents appealed to the Duplin County Superior Court. On 18 August 2000, the Superior Court filed an order affirming the order of the Clerk. Respondents have appealed this order.

Respondents raise two issues in this appeal. First, Respondents argue that the evidence does not support the Superior Court's order affirming the revocation of Respondents' Letters Testamentary. Second, Respondents argue that they are entitled to a jury trial on all factual issues.

As this Court has explained, on appeal from an order of the Clerk,

> the trial judge reviews the Clerk's findings and may either affirm, reverse, or modify them. If there is evidence to support the findings of the Clerk, the judge must affirm. Moreover, even though the Clerk may have made an erroneous finding which is not supported by the evidence, the Clerk's order will not be disturbed if the legal conclusions upon which it is based are supported by other proper findings.

*In re Estate of Pate*, 119 N.C. App. 400, 403, 459 S.E.2d 1, 2 (citations and internal quotation marks omitted), *disc. review denied*, 341 N.C. 649, 462 S.E.2d 515 (1995). The trial court here found that the evidence supported the findings made by the Clerk. The standard of review in this Court is the same as that in the Superior Court. *See id.*, 459 S.E.2d at 2-3. We agree with the trial court that the evidence supports the findings made by the Clerk.

[1] Two grounds for revocation of Letters Testamentary are relevant here. They are below:

(3) The person to whom [the Letters] were issued has violated a fiduciary duty through default or misconduct in the execution of his office, other than acts specified in G.S. 28A-9-2.

(4) The person to whom [the Letters] were issued has a private interest, whether direct or indirect, that might tend to hinder or be adverse to a fair and proper administration. The relationship upon which the appointment was predicated shall not, in and of itself, constitute such an interest.

N.C. Gen. Stat. § 28A-9-1(a) (1999). Cases from our Supreme Court and this Court make clear that the determination of whether to revoke an executor's Letters should be guided by consideration of whether the Estate is harmed or threatened with harm. *See In re Taylor*, 293 N.C. 511, 521, 238 S.E.2d 774, 779 (1977); *Matthews v. Watkins*, 91 N.C. App. 640, 645, 373 S.E.2d 133, 136 (1988), *aff'd per curiam*, 324 N.C. 541, 379 S.E.2d 857 (1989); *In re Estate of Longest*, 74 N.C. App. 386, 391, 328 S.E.2d 804, 808, *disc. review denied*, 314 N.C. 330, 333 S.E.2d 488 (1985). Thus, for example, our Supreme Court has held that a clerk does not abuse his discretion in declining to remove an executor for failure to perform duties such as filing inventories, when such duties can be enforced by an appropriate proceeding. *See Jones v. Palmer*, 215 N.C. 696, 699, 2 S.E.2d 850, 852 (1939). However, an executor must be removed, when an omission of such a duty "is sufficiently grave to materially injure or endanger the estate." *Id.*; *see also Matthews*, 91 N.C. App. at 645, 373 S.E.2d at 136 (same).

With respect to a private interest, the Supreme Court has observed that the same standard should be applied to the determination of whether letters testamentary should be revoked as to the determination of whether letters testamentary should be issued in the first instance. *See In re Moore*, 292 N.C. 58, 66, 231 S.E.2d 849, 854 (1977). In *Moore*, the Court stated that "when it appears that the personal interests of the prospective executor are so antagonistic to the interests of the estate and those entitled to its distribution that the same person cannot fairly represent both, the testator's nominee is unsuitable and disqualified as a matter of law." *Id.* at 65, 231 S.E.2d at 854. Our Court has stated that "[w]here conditions are present, which will prevent the executor from impartially performing his fiduciary duties, he should not be allowed to serve." *In re Moore*, 25 N.C. App. 36, 39, 212 S.E.2d 184, 186-87, *cert. denied*, 287 N.C. 259, 214 S.E.2d 430 (1975).

While Petitioners have made many allegations of misconduct against Respondents, they have identified as most significant the following three alleged acts by Respondent Mainor: (1) the payment by the Estate of $6,313.51 in attorney's fees to the law firm of Pinna Johnston & Burwell, for which payment the Estate was not reimbursed, for the creation of the LLC; (2) the payment of $14,000.00, for which the Estate was not reimbursed, to the Rose Hill Funeral Home Insurance Account, although Mainor asserted that decedent had no insurance; and (3) the payment of $35,865.00 by the Estate to the Rose Hill Funeral Home for decedent's funeral, with no itemization or other justification for the cost. Although any one of these, if supported by competent evidence, would be sufficient to justify revoking the Letters, the Clerk and court found the evidence sufficient as to all three, as well as others.

With respect to the payment of attorney's fees, the Clerk made the following finding:

28. . . . [T]he expenses of creating the limited liability company were paid out of the funds of the Estate, including a filing fee to the Secretary of State in the amount of $225.00, and attorneys fees to Pinna Johnston & Burwell in the amount of $6,313.51, as reflected on Plaintiff's Exhibit 40 and in Respondent's notebook. The monies paid for the filing fee were reimbursed to the Estate, but the attorneys fees were not. Payment of such expenses from the Estate was inappropriate. No motion was filed with the Court or order obtained for prior approval of such expenditures.

Respondent Mainor admitted in her testimony before the Clerk that the attorney's fees for creating the LLC were paid by the Estate and that the Estate was never reimbursed for this expense. Therefore, there was sufficient evidence to support this finding of fact. The Superior Court found that there was sufficient evidence to support the finding that estate assets had been used "to create a separate entity which did not benefit the estate in any manner." The payment by the Estate of attorney's fees for the creation of such a limited liability company was adverse to the interests of the Estate. We believe the trial court properly affirmed the Clerk's legal conclusion that payment of these expenses was inappropriate.

With respect to the payment to the insurance account, the Clerk made the following finding:

34. Respondent Mainor testified that decedent had no insurance policies of any type, and none were identified on any inventories filed in this matter. Rose Hill Funeral Home maintains an "insurance account," where persons pay insurance premiums and the funeral home handles obtaining "all kinds" of insurance for them. Respondent Mainor's mother owns seventy-five percent (75%) of Rose Hill Funeral Home, and Respondent Mainor "volunteers" at the funeral home. A check was written from decedent's Centura checking account approximately five days before [decedent's] death in the amount of $14,000.00, payable to the Rose Hill Funeral Home Insurance Account (Plaintiff's Exhibit 29). These funds have not been reimbursed to the Estate, despite the assertions of Respondent Mainor that decedent had no insurance.

This finding is entirely consistent with the record and the transcript of Mainor's testimony before the Clerk. The Superior Court found that there was sufficient evidence to support this finding. This factual finding supports the Clerk's legal conclusion that "Respondent Mainor has a private interest that would tend to hinder or be adverse to a fair and proper administration" of the Estate, and the court properly affirmed it.

Finally, with respect to the funeral expenses, the Clerk found as follows:

36. The Estate has paid $35,865.00 to Rose Hill Funeral home for decedent's funeral, although the only outstanding factors of the funeral were fancy programs and a gold colored casket that opened full length. No itemization of services was provided in support of this figure. Decedent was placed into a pre-existing crypt, and all that was done with regard to his actual burial was engraving his date of death on the crypt. Such expenses are clearly excessive, and further reflect Respondent Mainor's conflict of interest in this matter, as well as her utter disregard for the obligations imposed upon Respondents in handling the affairs of this Estate.

No accounting was ever provided to the Clerk to justify the amount of funeral expenses. One of the beneficiaries described the casket as being the "most outstanding feature of the funeral." Respondent Mainor could speak only generally about what services were typically included in a funeral service, and could give no details regarding what was provided for decedent's funeral. Months after the hearing, Respondents submitted to the trial court affidavits from Respondent

**IN RE ESTATE OF MONK**

[146 N.C. App. 695 (2001)]

Mainor and from an owner and president of a mortuary describing the casket in which decedent was buried. We agree with Petitioners that this does not constitute competent evidence. Although Respondents cite case law regarding what constitutes reasonable funeral expenses, it is impossible to evaluate whether the expenses here were reasonable without knowing for what the expenses were incurred. We affirm the trial court's finding and conclusion that there was sufficient evidence to support the Clerk's finding that the expenses were excessive.

On review, we agree with the trial court that the acts described above did not benefit the Estate and evidence a conflict of interest on the part of Respondent Mainor. Respondents argue that Respondent Southerland should not have been removed as executor because there is no evidence of misconduct on his part, and it was error for the Clerk and the trial court to impute Mainor's malfeasance to Southerland. We disagree. The Clerk found that "Respondent Southerland has evidenced no inclination to act independently of Respondent Mainor, and has in the past been required to follow specific directions of Respondent Mainor, regardless of the cost or waste involved to the Estate or any dissatisfaction with such directions." The trial court affirmed the "lack of independent action on behalf of Respondent Southerland." There is evidence in the record to support this conclusion. For example, one of the petitioners testified that when he asked Southerland about the Estate, Southerland answered: "This is Lounell's thing. I'm—I do what Lounell tells me to do." We believe the court properly concluded that both respondents violated their fiduciary duties and were properly removed.

The North Carolina cases cited by Respondents are inapposite. *Kerr v. Kirkpatrick*, 43 N.C. (8 Ired. Eq.) 137 (1851), addressed the issue of whether one coexecutor could be held personally liable for misconduct of his coexecutor. Moreover, the estate in that case consisted principally of bonds, notes, and open accounts, and the coexecutors divided these assets between them and took individual control over them. *See* 43 N.C. (8 Ired. Eq.) at 137. Each coexecutor was thus "answerable only for that part of [the estate] which came to his hands or was under his control." *Id.* at 140. Respondents concede that the issue of whether one coexecutor is responsible for the misconduct of another was not raised in *Longest*, a case in which one coexecutor sought the removal of the other, who had allegedly breached his fiduciary duty. *See* 74 N.C. App. at 387-88, 328 S.E.2d at 805-06.

**[2]** Citing *In re Estate of Lowther*, 271 N.C. 345, 156 S.E.2d 693 (1967), Respondents assert that they were entitled to have all issues of fact decided by a jury. However, our Supreme Court clearly indicated in *Lowther* that, in cases involving removal of executors, it is within the court's discretion whether to submit factual issues to a jury. *See* 271 N.C. at 356, 156 S.E.2d at 702. We find no abuse of discretion here.

We hold that the trial court properly concluded that there is evidence to support the factual findings of the Clerk discussed above, and that these factual findings are sufficient to support the revocation of Respondents' Letters Testamentary. Additionally, we hold that the trial court did not abuse its discretion in refusing to submit the factual issues to a jury. Accordingly, we affirm the order of the Superior Court affirming the order of the Clerk.

Affirmed.

Chief Judge EAGLES and Judge HUNTER concur.