An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1440

NORTH CAROLINA COURT OF APPEALS

Filed: 2 September 2014

IN THE MATTER OF THE ESTATE OF:

HAROLD LUTHER MILLS

Cabarrus County
No. 08 E 169

Appeal by respondent from order entered 9 May 2013 by Judge Richard L. Doughton in Cabarrus County Superior Court. Heard in the Court of Appeals 23 April 2014.

> *Weaver, Bennett & Bland, P.A., by Michael David Bland; and William L. Mills, III, for petitioner-appellee.*

> *Orsbon & Fenninger LLP, by R. Anthony Orsbon, for respondent-appellant.*

GEER, Judge.

Respondent E. Thomas Hartsell ("respondent") appeals from the trial court's order affirming the clerk of superior court's removal of respondent as executor of Harold Luther Mill's estate. Respondent argues that the trial court should have conducted a de novo review of the clerk's decision and that its factual findings were insufficient to support its conclusion that respondent has a private interest that may be adverse to the fair and proper administration of the estate. However, the

statute upon which respondent relies in arguing for de novo review had not come into effect as of the date of Harold Luther Mills' death and, therefore, cannot be applied in this case. We hold that the trial court applied the proper standard of review and correctly concluded that the clerk's findings of fact regarding respondent's private interests were sufficient to justify respondent's removal as executor under N.C. Gen. Stat. § 28A-9-1(a)(4) (2009). Accordingly, we affirm.

## Facts

Decedent Harold L. Mills ("decedent") was married to Audree S. Mills. The couple owned a substantial amount of property and did not have any children. Mrs. Mills suffered three strokes between 1996 and 2002, rendering her physically and mentally impaired and in need of a full-time caretaker.

On 8 September 2005, William L. Mills, III ("Mr. Mills, III"), decedent's nephew, filed a special proceeding seeking a declaration that both decedent and his wife were incompetent and requesting the appointment of guardians. Respondent's brother, Fletcher Hartsell ("Mr. Hartsell"), was decedent's attorney and represented decedent and his wife in those proceedings.

Evidence before the clerk indicated that in early 2006, while the incompetency proceedings were ongoing, Mr. Hartsell suggested that David Piatt, a long-time friend, employee, and

care-giver for decedent and his wife, persuade decedent to hire respondent to do the Mills' estate planning. Mr. Piatt introduced respondent to decedent in March 2006, and respondent began assisting decedent in financial planning around that time. Additionally, respondent, decedent, and Mr. Piatt, who were all members of McGill Baptist Church, began sitting together during church.

On 29 June 2006, decedent executed his last will and testament naming respondent as the personal representative of his estate. On 16 November 2006, decedent formed H & A Mills Properties, LLC with decedent and his wife each owning a 50% share of the LLC. Decedent then entered into an operating agreement under which both he and respondent served as co-managers of the LLC. Decedent and his wife transferred substantially all of their real and personal property to the LLC.

On 9 February 2007, Mr. Hartsell prepared the Harold L. and Audree S. Mills Charitable Remainder Unitrust Agreement (the "Trust"). Decedent and Mrs. Mills were named as the grantors of the Trust, and Mr. Hartsell was designated its trustee. The initial corpus of the Trust consisted of a 100% ownership interest in the LLC, and the Trust's terms provided for quarterly distributions to both decedent and Mrs. Mills in an

"amount equal to six and one-half percent (6.5%) of the net fair market value of the assets of [the Trust]" for the remainder of their lives. The Trust's terms further provided that upon the death of the survivor of decedent and Mrs. Mills, the entire balance of the Trust's assets would pass to McGill Baptist Church.

On 19 February 2008, decedent died, and the incompetency proceeding relating to him was subsequently dismissed. Upon decedent's death, respondent became the sole manager of the LLC. On 20 February 2008, respondent, as the personal representative named in decedent's will, was issued letters testamentary.

On 1 May 2008, Mrs. Mills was adjudicated incompetent, and Ray White was appointed as the guardian of her estate. On 9 September 2008, Mr. White filed suit ("*White v. Hartsell*") on behalf of Mrs. Mills against the Trust, Mr. Hartsell in his capacity as trustee of the Trust, the LLC, decedent's estate, respondent in his individual capacity and as executor of decedent's estate, and McGill Baptist Church. The complaint included causes of action, among others, for breach of fiduciary duty, undue influence, conversion of personal property, and unjust enrichment. As one of the remedies sought, the complaint asked the trial court to invalidate the Trust, which would have the effect of divesting McGill Baptist Church of its remainder

interest in the real estate held by the Trust and of returning ownership of that real estate to Mrs. Mills and decedent's estate.

Mrs. Mills died on 29 January 2010. On 17 June 2011, Michael David Bland was appointed collector of Mrs. Mills' estate.

On 8 February 2010, Mr. Mills, III filed a Verified Complaint for Removal of Personal Representative in the estate proceedings below. The complaint was voluntarily dismissed on 16 March 2012 for failure to serve respondent. On the same day, Mr. Mills, III filed a second complaint to remove respondent as executor of decedent's estate alleging (1) conflict of interest due to respondent's status as manager of the LLC, (2) lack of jurisdiction, and (3) breach of fiduciary duty. In response, on 9 May 2012, respondent filed a declaratory judgment action in superior court seeking a declaration whether the grounds alleged in the complaint existed and whether those grounds justified respondent's removal as executor under N.C. Gen. Stat. § 28A-9-1.

Additionally, respondent moved pursuant to N.C. Gen. Stat. § 28A-2-4(b) (2013) to transfer the removal proceedings to the superior court. On the same day, 9 May 2012, the clerk of court entered an order granting respondent's motion to transfer

pursuant to N.C. Gen. Stat. § 28A-2-4(b). Apparently, the clerk orally rescinded the transfer order, although the record on appeal does not include any written order.

On 13 July 2012, the Chief Justice of the North Carolina Supreme Court designated the estate proceedings of decedent, the estate proceedings of Mrs. Mills, respondent's declaratory judgment action, and a separate civil action against decedent's estate as exceptional cases under Rule 2.1 of the General Rules of Practice for the Superior and District Courts. The order assigned Special Superior Court Judge Richard L. Doughton to the cases designated as exceptional.

Assistant Clerk Jonathan Watson, on his own motion, held a hearing on 21 August 2012 for the purpose of addressing whether respondent should be removed as executor of decedent's estate. In an order entered 23 August 2012, the clerk concluded that respondent "has a private interest that hinders and is adverse to his being able to fairly and properly carry out his duties as executor of Mr. Mills' estate" and revoked the letters testamentary issued to respondent.

Respondent appealed the clerk's order, and, on 26 September 2012, Judge Doughton entered an order reversing the Assistant Clerk's decision based on his determination that alternate executors named in decedent's will had not been served and that

the record did not contain evidence to support the clerk's findings. Judge Doughton remanded to the clerk "for such proceedings as the Clerk deems just and proper." On 11 October 2012, Mr. Bland, acting as collector for Mrs. Mills' estate, filed a verified complaint also seeking removal of respondent as executor of decedent's estate.

On 26 October 2012, 7 November 2012, and 16 November 2012 the Assistant Clerk held an evidentiary hearings regarding the removal of respondent as executor. At the close of the hearings, the Assistant Clerk orally rendered his decision. He noted that he would not address questions of fiduciary duty because that issue would be addressed in *White v. Hartsell*. On 19 November 2012, the Assistant Clerk entered an order revoking the letters testamentary issued to respondent based again upon the conclusion that, under N.C. Gen. Stat. § 28A-9-1(a)(4), respondent "has private interests, direct or indirect, that might tend to hinder or to be adverse to a fair and proper administration of the Estate of Harold L. Mills . . . ."

Respondent appealed to the Superior Court. After a hearing on 14 and 15 January 2013, the trial court entered an order on 9 May 2013 affirming the Assistant Clerk's 19 November 2012 order. The order stated that the trial court had reviewed the Assistant Clerk's order and the record as required by N.C. Gen. Stat. § 1-

301.3 (2013) and had determined that the findings of fact in the 19 November 2012 order were supported by the evidence in the record and that those findings of fact supported the conclusions of law. Respondent timely appealed to this Court.

<u>Statutory Framework</u>

N.C. Gen. Stat. § 28A-9-1 (2009), the version of the statute applicable to this case, sets forth the procedure by which the clerk of superior court may revoke letters testamentary and remove an executor in an estate proceeding. Pursuant to N.C. Gen. Stat. § 28A-9-1(b), "[w]hen it appears to the clerk of superior court, on his own motion or upon verified complaint made to him by any person interested in the estate" that grounds exist for revocation of letters testamentary, the clerk "shall issue citation requiring such personal representative or collector, within 10 days after service thereof, to show cause why his letters should not be revoked." Upon return of a duly executed citation, the clerk "shall set the date for a hearing." *Id.*

The clerk must revoke the letters issued to the executor if at the hearing he or she determines that any of the following grounds exist:

> (1) The person to whom [letters testamentary] were issued was originally disqualified under the provisions of G.S. 28A-4-2 or has

become disqualified since the issuance of letters.

(2) The issuance of letters was obtained by false representation or mistake.

(3) The person to whom they were issued has violated a fiduciary duty through default or misconduct in the execution of his office, other than acts specified in G.S. 28A-9-2.

(4) The person to whom they were issued has a private interest, whether direct or indirect, that might tend to hinder or be adverse to a fair and proper administration. The relationship upon which the appointment was predicated shall not, in and of itself, constitute such an interest.

N.C. Gen. Stat. § 28A-9-1(a).

Under N.C. Gen. Stat. § 28A-9-4 (2009), "[a]ny interested person may appeal from the order of the clerk of superior court granting or denying revocation." In matters arising out of the administration of an estate, "the clerk shall determine all issues of fact and law" and enter an order "containing findings of fact and conclusions of law supporting the order[.]" N.C. Gen. Stat. § 1-301.3 (2013). On appeal of the clerk's order to superior court, the judge reviews the order solely for the purpose of determining:

(1) Whether the findings of fact are supported by the evidence.

(2) Whether the conclusions of law are supported by the findings of facts.

> (3) Whether the order or judgment is consistent with the conclusions of law and applicable law.

N.C. Gen. Stat. § 1-301.3(d).

## Discussion

Respondent first argues that the trial court should have considered de novo whether there existed grounds for removing respondent as executor of decedent's estate because the clerk lacked subject matter jurisdiction over the removal proceedings. Specifically, respondent argues that the clerk was divested of jurisdiction over the removal proceedings (1) by respondent's filing of a declaratory judgment action and request for transfer pursuant to N.C. Gen. Stat. § 28A-2-4(b), and (2) by the Chief Justice's designation of the case as "exceptional" and appointment of Special Superior Court Judge Doughton. We disagree.

The General Assembly amended the jurisdictional and procedural provisions of the probate code in 2011 and added N.C. Gen. Stat. § 28A-2-4 -- a new section and the section upon which respondent relies -- which now governs the subject matter jurisdiction of the clerk of superior court in estate proceedings for decedents *dying on or after 1 January 2012.* 2011 N.C. Sess. Laws ch. 344 § 14. Because decedent died in 2008, N.C. Gen. Stat. § 28A-2-4 does not apply to this case.

Instead, N.C. Gen. Stat. § 28A-2-1 (2009) governs the clerk of superior court's jurisdiction over the estate proceedings in this case.  N.C. Gen. Stat. § 28A-2-1 provides:

> The clerk of superior court of each county, ex officio judge of probate, shall have jurisdiction of the administration, settlement, and distribution of estates of decedents including, but not limited to, the following:
>
> (1)  Probate of wills;
>
> (2)  Granting of letters testamentary and of administration, or other proper letters of authority for the administration of estates.

"It is well-settled that the clerk of court is 'given exclusive original jurisdiction in the administration of decedents' estates except in cases where the clerk is disqualified to act.'"  *Livesay v. Carolina First Bank*, 200 N.C. App. 306, 309, 683 S.E.2d 453, 455 (2009) (quoting *In re Estate of Longest*, 74 N.C. App. 386, 390, 328 S.E.2d 804, 807 (1985)).

This Court has held that proceedings to remove an executor involve an estate matter over which the clerk has exclusive original jurisdiction.  *See In re Estate of Parrish*, 143 N.C. App. 244, 251, 547 S.E.2d 74, 78 (2001).  *See also In re Estate of Lowther*, 271 N.C. 345, 354, 156 S.E.2d 693, 700 (1967) (holding that proceedings to revoke letters of administration "must be commenced before the clerk who issued them in the first

instance" and "the judge of the Superior Court has no jurisdiction to appoint or remove an administrator or a guardian"); *Porth v. Porth*, 3 N.C. App. 485, 497-98, 165 S.E.2d 508, 517 (1969) (holding superior court judge in declaratory judgment action properly denied motion to remove administrator of estate because such motion "must be presented by direct proceedings before the Clerk of Superior Court, who, as probate judge, has exclusive original jurisdiction to hear and decide" the motion).

Consequently, this Court has applied the standard of review applicable to appeals from estate matters to an appeal from a clerk's order revoking letters testamentary. *See In re Estate of Monk*, 146 N.C. App. 695, 697, 554 S.E.2d 370, 371 (2001). As explained by this Court in *In re Estate of Pate*, 119 N.C. App. 400, 402-03, 459 S.E.2d 1, 2 (1995):

> On appeal to the Superior Court of an order of the Clerk in matters of probate, the trial court judge sits as an appellate court. When the order or judgment appealed from does contain specific findings of fact or conclusions to which an appropriate exception has been taken, the role of the trial judge on appeal is to apply the whole record test. In doing so, the trial judge reviews the Clerk's findings and may either affirm, reverse, or modify them. If there is evidence to support the findings of the Clerk, the judge must affirm. Moreover, even though the Clerk may have made an erroneous finding which is not supported by the evidence, the Clerk's order will not be

> disturbed if the legal conclusions upon which it is based are supported by other proper findings.

(Internal citations and quotation marks omitted.) In this case, the trial court, therefore, properly declined to review the clerk's order de novo.

Respondent contends, nonetheless, that "the complaints and evidence presented were based upon purported breach of fiduciary duty" and "[s]uch matters are clearly not a part of the administration of an estate." However, as explained in *In re Estate of Parrish*, although "an action for damages resulting from a fiduciary's breach of duty in the administration of a decedent's estate is not a claim under the original jurisdiction of the clerk of court[,]" a proceeding to remove an estate administrator based upon a breach of fiduciary duties is "not a civil action, but a proceeding concerning an estate matter, which [is] exclusively within the purview of the Clerk's jurisdiction, and over which the Superior Court retain[s] appellate, not original, jurisdiction." 143 N.C. App. at 251, 547 S.E.2d at 78.

Accordingly, we conclude that the clerk had subject matter jurisdiction over the revocation hearing. Furthermore, the clerk did not have authority to transfer the removal proceedings to the superior court pursuant to N.C. Gen. Stat. § 28-2-4(b)

because that statute was inapplicable to these estate proceedings. Therefore, the transfer order was invalid and did not divest subject matter jurisdiction from the clerk.[1] Finally, the trial court applied the proper standard of review.

Respondent next contends that the Supreme Court's designation of the estate proceedings as "exceptional" and the appointment of Special Superior Court Judge Doughton divested the clerk of subject matter jurisdiction over the removal proceedings. We disagree.

Rule 2.1(a) of the General Rules of Practice for the Superior and District Courts allows the Chief Justice to "designate any case or group of cases as (a) 'exceptional' or (b) 'complex business'" and to appoint a specific superior court judge to the case. The Rule explains:

> Factors which may be considered in determining whether to make such designations include: the number and diverse interest of the parties; the amount and nature of anticipated pretrial discovery and motions; whether the parties voluntarily agree to waive venue for hearing pretrial motions; the complexity of the evidentiary matters and legal issues involved; whether it will promote the efficient administration of justice; and such other matters as the Chief Justice shall deem appropriate.

---

[1]We express no opinion on whether the clerk has authority to grant a N.C. Gen. Stat. § 28-2-4(b) transfer over matters that are otherwise within the clerk's exclusive original jurisdiction.

Gen. R. Pract. 2.1(d).

Where, as here, a group of cases requires substantial judicial expertise and involves multiple claims regarding the same subject matter and parties, the appointment of one judge to preside over each case is intended to promote judicial efficiency and prevent inconsistent rulings. *Beroth Oil Co. v. N.C. Dep't of Transp.*, ___ N.C. ___, ___, 757 S.E.2d 466, 476 (2014). The appointment of a specific superior court judge in this case simply meant that any matters for the superior court to decide would be decided by Judge Doughton. Nothing in the General Rules of Practice suggests that the appointment of a specific superior court judge divests a clerk of superior court of jurisdiction over matters within its statutory exclusive original jurisdiction. Respondent cites no authority suggesting that Rule 2.1 designations are intended to -- or legally could -- alter the allocation of subject matter jurisdiction decided upon by the General Assembly.

Accordingly, we conclude that the trial court invoked the proper standard of review in reviewing the clerk's order. The question remains whether the trial court applied that standard of review properly.

The Assistant Clerk revoked respondent's letters testamentary based on his conclusion that respondent "has

private interests, direct or indirect, that might tend to hinder or to be adverse to a fair and proper administration of the Estate of Harold L. Mills in violation of N.C.G.S. § 28A-9-1(a)(4)." "[T]he determination of whether to revoke an executor's Letters should be guided by consideration of whether the Estate is harmed or threatened with harm." *In re Estate of Monk*, 146 N.C. App. at 698, 554 S.E.2d at 371. There exist grounds for removal under N.C. Gen. Stat. § 28A-9-1(a)(4) "when it appears that the personal interests of the prospective executor are so antagonistic to the interests of the estate and those entitled to its distribution that the same person cannot fairly represent both[.]" *In re Moore*, 292 N.C. 58, 65, 231 S.E.2d 849, 854 (1977). However, "it is not necessary to show an actual conflict of interest to justify a refusal to issue letters of administration; it is sufficient that the likelihood of a conflict is shown." *In re Moore*, 25 N.C. App. 36, 40, 212 S.E.2d 184, 187 (1975)[2].

In this case, the Assistant Clerk made the following pertinent findings of fact in support of his conclusion that respondent has a personal interest. Prior to decedent's death, respondent and decedent were co-managers of H & A Mills

_____

[2]Although the Court of Appeals case in *In re Moore* involved the same parties as the Supreme Court case, the two opinions related to separate appeals, and the Supreme Court decision did not disturb the Court of Appeals' holding in *In re Moore*.

Properties, LLC, and respondent continued to be manager of the LLC until August 2012. As a manager, respondent "exercised a great deal of control" over decedent's property and transferred a large amount of decedent's and Mrs. Mills' assets to a Charitable Remainder Unitrust created by his brother, Mr. Hartsell, with Mr. Hartsell serving as trustee. Respondent was paid in excess of $150,000.00 by the LLC for his services as manager.

The Assistant Clerk found that as executor of decedent's estate, respondent was tasked with determining how the estate should proceed in litigation. Specifically, respondent would have to decide whether the estate would join the Estate of Mrs. Mills in *White v. Hartsell*. That lawsuit "raised issues of both extrinsic and intrinsic fraud" by respondent relating to the creation and implementation of the Trust. In a separate matter, respondent was responsible for deciding whether the estate should sue Wachovia Bank for mismanagement of the estate's funds. At the time respondent decided that the estate would not pursue a lawsuit, respondent's wife was employed by Wachovia.

Additionally, the Assistant Clerk found that respondent "has control of the attorney-client privilege which exists between the Estate of Harold L. Mills and Attorneys William L. Mills, III, Tony Orsbon, Jerry Parnell, Fletcher L. Hartsell,

Jr., Michael Burgner and others who may have relevant information and testimony which is adverse to the interests of [respondent] but necessary for a proper and just administration of the Estate of Harold L. Mills."

As this Court explained in *In re Moore*, "[o]ne cannot represent his own interest and at the same time represent those of another which are in conflict with his own with fairness and impartiality to either." *Id.* In *In re Moore*, this Court held that the executor could not act impartially when one of his duties as executor would require him to decide whether to sue his former employer, for whom he had performed accounting services for approximately 19 years. *Id.* The Court explained that "[e]specially when a decision to bring suit might endanger respondent's chances of future employment by the firm, the possibility that his decision to bring suit will be influenced by his own personal interests is great. . . . Even if respondent actually brings suit on behalf of the estate, his position would be such as to make him amenable to suggestions of failure to prosecute the action fully because of his relationship with [his former employer]." *Id.*

Here, as in *In re Moore*, the findings establish a likelihood that respondent cannot act impartially in making decisions involving litigation on behalf of decedent's estate.

With respect to the alleged mishandling of the estate's funds by Wachovia, respondent faced a choice of (1) filing suit against Wachovia and potentially adversely affecting his wife's employment there or (2) not vigorously pursuing the recovery of funds owed to the estate.

Even more significant, however, is the potential conflict arising with respect to the estate's position in *White v. Hartsell*. If the allegations of fraud raised in that lawsuit are proven true, the Trust would be voided and the property respondent transferred from the LLC to the Trust would be distributed to decedent's and Mrs. Mills' estates. The estate, therefore, would benefit by recovering a significant amount of assets. On the other hand, respondent has a personal interest in establishing that he committed no wrongdoing and in vindicating his and his brother's actions.

Even if respondent is not a party, the pending litigation would confront him with a decision related to the attorney-client privilege that would place his personal interests at odds with those of the estate. On the one hand, as the manager of the LLC and the brother of the Trust's creator and trustee, respondent would have an interest in enforcing the privilege in order to protect his own personal interests by concealing harmful information. In doing so, however, respondent could be

preventing decedent's estate from recovering assets of which it may have been fraudulently deprived.

Although it may be that respondent did not in fact commit any wrongdoing, under *In re Moore*, the findings need not show an actual conflict of interest, but rather "it is sufficient that the likelihood of a conflict is shown." *Id.* The Assistant Clerk's findings, in this case, are sufficient to show a likelihood of a conflict of interest and, therefore, support the conclusion that respondent has a private interest "that might tend to hinder or be adverse to a fair and proper administration." N.C. Gen. Stat. § 28A-9-1(a)(4).

Respondent's arguments on appeal regarding the Assistant Clerk's findings of fact amount to factual arguments that he did not in fact engage in any misconduct or breach of a fiduciary duty. The Assistant Clerk, however, made no determination regarding whether respondent engaged in misconduct. Instead, the Assistant Clerk's findings simply recognize that evidence exists to support the allegations of misconduct and that this created a potential conflict of interest with respect to respondent's personal interests and the best interests of the estate. Because the Assistant Clerk's findings are supported by evidence in the record, and those findings support the conclusion that respondent has a private interest that might

tend to hinder or be adverse to a fair and proper administration of decedent's estate, we affirm.

Affirmed.

Judges STEPHENS and ERVIN concur.

Report per Rule 30(e).